## In re FIRST FINANCIAL ENTERPRISES, INC., Debtor.

### Bankruptcy No. 88–30993.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

April 14, 1989.

Barbara K. Hoffman–Hill, Dallas, Tex., for debtor, First Financial Enterprises, Inc.

Robert O. Smith, Austin, Tex., for Stephen S. Durish, Receiver for First Service Life Ins. Co. ("FSLIC").

Gerald P. Keith and Ginnings, Birkelbach, Keith & Delgado, El Paso, Tex., for Maury Page Kemp.

Patrick Cantilo, Austin, Tex., for R.B. Ashworth, Conservator for Knickerbocker Life Ins. Co. ("KLIC").

## OPINION

RONALD B. KING, Bankruptcy Judge.

The question presented in this case is whether the Court should abstain or dismiss a Chapter 11 case in which the debtor, a holding company, attempts to administer the assets and liabilities of multiple tiered subsidiary corporations not in bankruptcy, some of which are not eligible to be in bankruptcy. Because of the unique circumstances of this case, this Court chooses to abstain and dismiss this Chapter 11 case.

First Financial Enterprises, Inc. (the "Debtor") filed this Chapter 11 case on December 2, 1988. The evidence shows that the Debtor was incorporated in 1980 and the sole shareholder is Mr. Maury Page Kemp. The Debtor is the one hundred percent shareholder of two subsidiary corporations, Triangle Electric Supply Company ("TESCO") and First Financial Management, Inc. ("FFM"). The Debtor is also 99.8% owner of First Financial, a Savings Association ("FFSA"), but FFSA has been closed and is in liquidation. TESCO is an operating electric supply company business in El Paso, Texas. FFM is itself a holding company which is the one hundred percent shareholder of First Service Life Insurance Company ("FSLIC"), which in turn is also the one hundred percent shareholder of Knickerbocker Life Insurance Company ("KLIC"). FSLIC also is the one hundred percent owner of three other corporations, Security Southwest Life Insurance Company ("SSLIC"), Security Southwest Marketing Company ("SSMC"), and First Service Life Insurance Company of New Mexico ("FSLICNM"). The ownership interests can be best understood by the following organizational chart:

FSLIC is an insolvent life insurance company not authorized to do business in Texas, but which sold annuities in Texas and is currently in a court ordered receivership proceeding under Texas law. *See* Tex.Ins. Code Ann. art. 21.28 (Vernon Supp.1989). The Motion to Abstain or Dismiss in this case is brought by Stephen S. Durish, the Receiver of FSLIC (the "Receiver"). The receivership was imposed on December 1, 1988, by the Travis County District Court, one day prior to the filing of this bankruptcy case.

KLIC, which is wholly owned by FSLIC, is also an insolvent life insurance company in Texas, and has consented to the appointment of a conservator by the Texas Commissioner of Insurance under article 21.28 of the Texas Insurance Code (the "Conservator"). Various annuitants and policyholders of FSLIC and KLIC have made claims against the respective insurance companies as well as, in some instances, the Debtor and Mr. Kemp, individually.

The Debtor acquired the shares of TESCO through a secured loan from FSLIC in the amount of $12.8 million. The Debtor simultaneously collaterally pledged the shares of TESCO to FSLIC, and Mr. Kemp

personally guaranteed the loan. FSLIC in turn collaterally pledged the Debtor's loan agreement, note, pledge, security agreement and guaranties to El Paso Electric Company as security for a loan to FSLIC currently totaling the same $12.8 million. In a separate transaction, the shares of all of the subsidiary corporations except TESCO were pledged by the Debtor to Sunwest Bank as security for a $4.2 million indebtedness to Sunwest. Mr. Kemp personally guaranteed that loan as well. Thus, the evidence shows that the Debtor has two creditors: FSLIC, which is a second tier subsidiary corporation, and Sunwest Bank.

The evidence also shows that the Debtor currently has no employees; it has no income other than income which is passed through from TESCO and paid directly to FSLIC pursuant to the loan agreement; and does not pay rent for an office, although the Debtor shares an office with Mr. Kemp's comptroller. The Debtor itself has not sold any annuities or insurance policies, although some annuitants have apparently asserted claims directly against the Debtor and Mr. Kemp.

Mr. Kemp testified at length, on behalf of the Debtor, about the reasons for the filing of this Chapter 11 case. Although no plan of reorganization has yet been filed, the broad outlines of a proposed plan would include listing all creditors of the subsidiary corporations as creditors of the Debtor in this case. In addition, all assets of the subsidiary corporations, such as real estate and cash on hand, would become property of the Debtor's estate and would fund payments under a plan of reorganization. The plan of reorganization would also provide for the release of all annuitants' claims against the Debtor and Mr. Kemp, individually; the dismissal and release of a lawsuit for breach of fiduciary duty filed by the Receiver of FSLIC against Mr. Kemp, individually; and the release of all guaranties of Mr. Kemp for obligations of the Debtor and the subsidiary corporations. Neither the Debtor nor Mr. Kemp would contribute new funds or property to the proposed

plan. In effect, all of the subsidiary corporations' assets and liabilities would be merged into one plan of reorganization and the state appointed receivership and conservatorship would yield, under the plan of reorganization, to the jurisdiction of the Bankruptcy Court.

The disputes between the Receiver and Conservator, on one side, and the Debtor and Mr. Kemp, on the other, relate to control of the assets of FSLIC and KLIC, and the lawsuit for breach of fiduciary duty filed by the Receiver against Mr. Kemp. It is clear that the state court litigation between the two sides was contemplated before the filing of this Chapter 11 case and is hotly contested. There have been numerous discovery disputes in this Court in the short time this case has been on file concerning the Debtor obtaining the records of FSLIC and KLIC, and attempts by those entities to obtain records from the Debtor. It would be an understatement to say that the parties were well-acquainted with one another before this Chapter 11 case was filed. The disputes in this Court are merely a continuation of the ongoing conflict between the two sides.

The basic premise of the Motion to Abstain or to Dismiss is that the Debtor is attempting to preempt the state insurance regulatory scheme by the filing of this Chapter 11 case of the parent corporation. The Receiver's argument is that under sections 109(b)(2), 109(b)(3) and 109(d) of the Bankruptcy Code,[1] FSLIC and KLIC are not eligible to be Chapter 11 debtors, and therefore, the filing of this case is an indirect attempt to place the life insurance companies into a Chapter 11 reorganization case. The argument is further made that the Court should abstain and defer to the state's regulatory scheme concerning the disposition of the assets and liabilities of life insurance companies by the Receiver and Conservator, respectively, of FSLIC and KLIC. Alternatively, the Receiver seeks dismissal of this case under section 1112 of the Bankruptcy Code based upon

---

1. 11 U.S.C. § 109(b)(2), 109(b)(3) & (d) (1982 & Supp. IV 1986). Title 11 is generally referred to herein as the Bankruptcy Code.

the absence of a reasonable likelihood of rehabilitation and the doctrine of bad faith filing.

The Debtor's response to the Receiver's Motion and arguments is that the Debtor is entitled to Chapter 11 relief since the Debtor itself is not an entity which is disqualified under section 109(b) of the Bankruptcy Code from filing a Chapter 11 case. Furthermore, the filing of this case is alleged to be in good faith since it is an attempt to consolidate the disputes and conflicts among the parties into one judicial forum rather than through various lawsuits, a receivership, and a conservatorship. The Debtor argues that the conflict will continue for years on numerous fronts, causing dissipation of the assets of the Debtor and its subsidiary corporations, to the detriment of claimants and creditors of the Debtor and the various subsidiary corporations. The fact that Mr. Kemp individually will be released of his individual obligations, according to the Debtor, is merely a part of the overall speedy and efficient resolution in this Court of the claims against the Debtor and its subsidiaries. The Debtor's argument is that the case should be allowed to continue and that the Bankruptcy Court should take jurisdiction of the assets and liabilities of the FSLIC receivership, the KLIC conservatorship and the other subsidiaries in order to promote judicial and administrative economy, avoid inconsistent results, and conserve resources which would be expended in fighting numerous lengthy and time-consuming battles in various judicial and administrative proceedings.

## I.

### ABSTENTION

Section 305 of the Bankruptcy Code provides that a court may dismiss or suspend a bankruptcy case if "the interests of creditors and the debtor would be better served by such dismissal or suspension."[2] The legislative history recognizes "that there are cases in which it would be appropriate for the court to decline jurisdiction."[3] Since the decision to abstain under section 305(a) is not "reviewable by appeal or otherwise,"[4] it is certainly an extraordinary power which should be exercised sparingly and only in unusual circumstances. *In re RAI Marketing Services, Inc.*, 20 B.R. 943, 945 (Bankr.D.Kan.1982). It is clear that this Court should not abstain when the Debtor and creditors would be better served by the Court's continued jurisdiction over the case. *Central Mortgage & Trust, Inc. v. Texas (In re Central Mortgage & Trust, Inc.)*, 50 B.R. 1010, 1021 (S.D.Tex.1985). Abstention is proper, however, where considerations of comity with state and federal administrative proceedings would dictate that the Bankruptcy Court stay its hand in order to prevent undue interference or entanglement with state or federal administrative and regulatory schemes. *In re A & D Care, Inc.*, 90 B.R. 138 (Bankr.W.D.Pa.1988) (state regulation of private correctional facilities); *In re O'Neil Village Personal Care Corp.*, 88 B.R. 76 (Bankr.W.D.Pa.1988) (state court appointed receiver of personal care facility); *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, (Bankr.S.D.N.Y.1981) (Securities and Exchange Commission receivership).[5] Abstention would also be proper, in this Court's view, in a case in which an attempt is made to circumvent the Bankruptcy Code by doing indirectly what cannot be done directly, such as the administration in a Chapter 11 case of an ineligible Chapter 11 entity, or the use of a Chapter 11 case purely as a litigation strategy.

The obvious purpose of the filing of this Chapter 11 case is an attempt by the Debtor and its sole shareholder to halt the state court receivership and conservator-

---

**2.** 11 U.S.C. § 305(a)(1) (1982 & Supp. IV 1986).

**3.** S.Rep. No. 95–989, 95th Cong., 2d Sess. 35, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5821.

**4.** 11 U.S.C. § 305(c) (1982 & Supp. IV 1986).

**5.** *See also Peoples Bankshares, Ltd. v. Dept. of Banking (In re Peoples Bankshares, Ltd.)*, 68 B.R. 536 (Bankr.N.D.Iowa 1986) (automatic stay does not prohibit Iowa Superintendent of Banking from regulation and control of subsidiary banks of debtor holding company).

ship of the Debtor's subsidiary insurance companies and take control of their assets. A similar question was raised in the case of *Peoples Bankshares, Ltd. v. Department of Banking (In re Peoples Bankshares, Ltd.,* 68 B.R. 536 (Bankr.N.D.Iowa 1986). In *Peoples Bankshares,* the debtor was a bank holding company whose only assets were the shares of stock in five state chartered banks. The debtor filed a Complaint for Declaratory Judgment to prohibit the Iowa Superintendent of Banking from exercising regulatory authority over the subsidiary banks. The debtor alleged that the automatic stay imposed by section 362, or alternatively the court's inherent authority under section 105, required that the Superintendent of Banking be enjoined from further regulation and control of the subsidiary banks. The bankruptcy court held that although the debtor owned the outstanding shares of stock in the five subsidiary banks, such ownership did not make the banks themselves property of the bankruptcy estate. The court stated that the legal distinctions between the corporations would be respected and that the automatic stay did not apply to actions against the five subsidiary banks. The court further noted that under section 109(b)(2) of the Bankruptcy Code, the banks were not eligible for bankruptcy protection. In dismissing the adversary proceeding for failure to state a claim upon which relief could be granted, the court stated:

> Nonetheless, the Debtor urges this Court to skirt the proscription of § 109(b)(2) by arguing that the Court may take jurisdiction over the five state banks as assets of the Peoples Bankshares bankruptcy estate. However, the Court is greatly influenced by the purpose of this statute, the breadth with which it names the institutions covered, and the financial and public policy ramifications of divesting those officers of state government, possessed with both expertise and authority to regulate state chartered banks, from the power to do so.

*In re Peoples Bankshares, Ltd.,* 68 B.R. at 540.

While a bankruptcy filing of a debtor, which is itself the parent company of other entities not eligible to file for bankruptcy protection, is not necessarily a filing which would require abstention, in the totality of circumstances in this case, it appears that the Debtor has filed this case for the sole purpose of doing indirectly what cannot be done directly. In order to defeat the receivership and conservatorship of FSLIC and KLIC, the Debtor would have obviously relished the opportunity to place those corporations into Chapter 11 cases. Because of the mandate of section 109(b), however, that is not possible. Therefore, the Debtor is attempting to accomplish the same objective by its Chapter 11 filing and inclusion of all assets and creditors of the ineligible subsidiary corporations within the umbrella of this Chapter 11 case. As discussed below, the filing of this case is a litigation tactic and an attempt to unfairly obtain leverage by the Debtor. *In re Business Information Co.,* 81 B.R. 382, 385 (Bankr.W.D.Pa.1988). For these reasons, this Court chooses to abstain under section 305 of the Bankruptcy Code and will dismiss this case pursuant to such power.

## II.

### DISMISSAL UNDER SECTION 1112

Although the Court has determined to dismiss this case pursuant to its abstention power under section 305, the Receiver alternatively filed a Motion to Dismiss this case under section 1112 of the Bankruptcy Code because of the absence of a reasonable likelihood of rehabilitation and because the filing of this case was in bad faith pursuant to *In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986).

It appears that this case should be dismissed pursuant to section 1112(b)(1) since there is an absence of a reasonable likelihood of rehabilitation. The Debtor is a holding company and has no ongoing business operations. While the Debtor has assets in the form of shares of stock in subsidiary corporations, all of the subsidiary corporation shares are pledged to lenders to secure debts far in excess of the value of the subsidiary corporations. In

addition, the Debtor's entire proposal for a plan of reorganization (and therefore the entire case) hinges upon including all of the assets of the various subsidiary corporations in the estate of the Debtor. While this may be permissible if the subsidiary corporations were eligible to file and did file their own Chapter 11 cases which were substantively consolidated with the Debtor's case, it is not permissible to jointly administer assets in the manner proposed in this case. *See In re Peoples Bankshares, Ltd., supra.* Since a plan including all of the assets and liabilities of the subsidiary corporations is not confirmable, this case should be dismissed pursuant to Section 1112(b)(1) since there is no reasonable likelihood of a rehabilitation.

Furthermore, the filing of this case meets the classic bad faith definition outlined in *Little Creek,* although the facts vary significantly. While *Little Creek* involved a single asset debtor which had no employees, no cash flow, no other sources of income, and few unsecured creditors,[6] the obvious purpose in this case is to use the Chapter 11 filing as a litigation strategy and leverage in order to defeat the Texas regulatory scheme for the receivership and conservatorship of insolvent life insurance companies.[7] Litigation has been long contemplated and is now pending between the State Insurance Commission, on one side, and FSLIC, KLIC and Maury Page Kemp, on the other side. Because of these bitter and hotly contested continuing battles, the Debtor has attempted to preempt the state scheme for liquidation of FSLIC and KLIC by the filing of this Chapter 11 bankruptcy case *one day* after the receivership of FSLIC was ordered in state court. While the filing of a Chapter 11 case is often, to some extent, a litigation tactic, in the circumstances of this case, the Court finds that it is an impermissible and bad faith tactic which attempts to emasculate the receivership and conservatorship of

FSLIC and KLIC, respectively. The further "side benefit" of the release of Maury Page Kemp from all liability for obligations of the Debtor, FSLIC and KLIC, and his individual director liability, further evidences the true intent and reasons for the filing of this Chapter 11 case. While the attempt to obtain releases of guarantors in a Chapter 11 case is not necessarily evidence of bad faith, it can be taken in the overall circumstances of this case to be an element. It is the opinion of this Court that based upon all of the circumstances present in this case, the filing of this case was to defeat the state's life insurance company regulatory scheme, administer in this bankruptcy case the assets of entities which have not filed and are ineligible to file bankruptcy, and to obtain the release of liability for millions of dollars of the sole shareholder of the Debtor. Under these circumstances, the Court declines to be a party to this strategy and determines to dismiss this case as a bad faith filing.

### CONCLUSION

For the reasons stated in this opinion, the Court grants the Motion for Abstention under Section 305 of the Bankruptcy Code and dismisses this case pursuant to Section 305. Alternatively, the Court also grants the Motion to Dismiss under Section 1112 of the Bankruptcy Code because of the absence of a reasonable likelihood of rehabilitation and the bad faith filing of this case. An Order of Dismissal will be rendered contemporaneously with this opinion.

---

**6.** *See Little Creek,* 779 F.2d 1068, 1072 (5th Cir. 1986); and *In re Fry Road Associates, Ltd.,* 66 B.R. 602, 605 (Bankr.W.D.Tex.1986).

**7.** *See In re Business Information Co.,* 81 B.R. 382, 385 (Bankr.W.D.Pa.1988), in which the court held that "the filing of a bankruptcy petition as a litigation tactic, or to resolve what is essentially a two party dispute, is an indication of a bad faith filing." The case was dismissed under Section 1112 as a bad faith filing and under Section 305 abstention powers.