In re MURDOCK MACHINE AND
ENGINEERING COMPANY
OF UTAH, Bankrupt.

UNITED STATES of America, Appellant,

v.

Logan A. BAGLEY, Trustee, Appellee.

No. 92–4022.

United States Court of Appeals,
Tenth Circuit.

April 6, 1993.

Katherine S. Gruenheck, Atty., Civ. Div. (Stuart M. Gerson, Asst. Atty. Gen., David J. Jordan, U.S. Atty., Barbara C. Biddle and Bernard J. McKay, Attys., Civ. Div., with her on the brief), Dept. of Justice, Washington, DC, for appellant.

Robert H. Koehler of Patton, Boggs & Blow (James B. Lee, Craig B. Terry, and E. Russell Vetter of Parsons, Behle & Latimer, Salt Lake City, UT, and Jonathan S. Baker, of Patton, Boggs & Blow, with him on the brief), Washington, DC, for appellee.

Before LOGAN and TACHA, Circuit Judges, and CAUTHRON, District Judge.*

LOGAN, Circuit Judge.

The United States appeals the district court's affirmance of the bankruptcy court's grant of summary judgment in favor of appellee Logan Bagley, trustee in bankruptcy for Murdock Machine and Engineering Co. of Utah (Murdock). The issues on appeal are whether the district court erred in not deferring to the Armed Services Board of Contract Appeals (ASBCA) for resolution of claims disputes relating to government contracts that apparently comprise the only asset and unresolved liabilities of Murdock in this longstanding bankruptcy case; and, if deferral was unnecessary, whether the court erroneously denied the government's claims against the bankruptcy estate. We must also consider the effect of an ASBCA decision issued after this appeal was briefed.

I

· This dispute arises out of a government contract issued in 1971 to Murdock by the Navy for construction of anti-submarine rocket launchers (the ASROC contract). The contract was originally awarded as a fixed-price contract, but Murdock encountered serious financial difficulties almost immediately and asked the Navy for help. The Navy guaranteed a $2.5 million loan to

* The Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation.

Murdock toward completion of the contract, but when this proved insufficient Murdock petitioned the Navy to have the contract modified from a fixed-price contract to a cost-reimbursement/no fee contract. The Navy initially indicated that it would grant the modification, but subsequently changed its mind, after it found another potential supplier.

In 1975, the Navy terminated for default the ASROC contract and several other non-ASROC defense contracts previously awarded to Murdock, and Murdock filed for bankruptcy protection.[1] The government filed proofs of claims against Murdock's estate, seeking, *inter alia,* what it characterized as "unliquidated progress payments," which it contends not only eliminated any governmental liability on the ASROC contract but made the government a net creditor of Murdock's estate.

In 1976, during the pendency of the bankruptcy proceedings, the trustee filed a complaint with the ASBCA, claiming that the Navy wrongfully terminated the ASROC contract. Thereafter, in 1978, Congress passed the Contract Disputes Act (CDA), which increased the jurisdiction of contracting officers and the ASBCA—previously limited to issues relating to the terms of the contract itself—to permit determination of breach of the contract issues, including the award of consequential damages. The trustee then submitted a second claim to the Navy contracting officer, asserting substantial damages from the wrongful termination of the ASROC contract. When the contracting officer failed to issue a timely decision on this claim the trustee filed an appeal with the ASBCA. Soon thereafter, the contracting officer did issue his opinion, denying relief to the trustee, and the trustee again appealed to the ASBCA.

The ASBCA consolidated the three cases and held a trial on the merits of the claims. The ASBCA ruled that the Navy's termination for default had been proper, and denied the trustee's claims for relief. The trustee then took the case to the Federal Circuit, which reversed the ASBCA. *Murdock Mach. & Eng'g Co. v. United States,* 873 F.2d 1410, 1413 (Fed.Cir.1989). That court held that the ASROC contract had in fact been converted into a cost-reimbursement/no fee contract and for that reason the Navy's termination for default was improper. Consequently, the Federal Circuit remanded to the ASBCA for a recalculation of liability.[2]

Not content to await the ASBCA's ruling following the remand, the trustee moved the bankruptcy court to disallow the government's claim for unliquidated progress payments on the ASROC contract on the basis of the Federal Circuit's decision. Although acknowledging the bankruptcy court's jurisdiction over the claim, the government asked the court to abstain from ruling on the merits, given the pendency of exactly the same issue with the ASBCA. The bankruptcy court refused, holding that it had jurisdiction over the issue because of the government's filing of the proofs of claims. It held that the case did not present the proper circumstances for deferral to the ASBCA, relying particularly on the fifteen year pendency of the bankruptcy and the decision of the Federal Circuit. On the merits, the court concluded that the Federal Circuit's holding that the Navy improperly terminated the ASROC contract precluded the United States from any affirmative recovery on the contract. It disallowed the government's claim for affirmative relief, and ruled that "[t]he quantification procedure imposed by the Federal Circuit [remanding to the ASBCA] should be allowed to run its course." App. at 158.

1. Because the bankruptcy proceeding was filed in 1975, the Bankruptcy Act of 1898 applies, rather than the current Bankruptcy Code.

2. In its remand order, the court instructed the ASBCA to recalculate the damages under the termination for convenience clause, citing 32 C.F.R. §§ 7.103–21(c) and 8.701(a) (1971), which related to a fixed-price contract. This order arguably disregards the court's own finding that the contract had been converted to a cost-reimbursement/no fee contract. The termination clause for such contracts would be found in 32 C.F.R. §§ 7–203.10 and 8.702 (1971), which has some differences in wording that form the arguments fueling the dispute before us.

The district court affirmed, and this appeal followed.

One of the essential differences between the parties on the merits relates to whether the Federal Circuit meant to require quantification of the amount owing between the parties under the termination for convenience clause of a fixed cost contract, because it referenced that regulation in its opinion, rather than the termination clause of a cost-reimbursement/no fee contract. The other disputes arise out of the different wording of those termination clauses and relate to reimbursable costs and offsets under the termination clause. The government claims entitlement to "unliquidated progress payments,"[3] that together with other credits it seeks would cause it to owe Murdock nothing and give it a multi-million dollar claim against the bankruptcy estate. We understand the bankruptcy and district courts (and the trustee) to acknowledge that money the United States actually paid to Murdock as progress payments during the life of the ASROC contract are to be offset against sums the government otherwise would have to pay Murdock. Rather, the major argument between the parties is whether the government is entitled to an "adjustment for loss" to reflect losses the contractor would have sustained had it completed the contract. *See* Contracting Officer's Final Decision of May 6, 1991 at 6–7, App. 167K–167L; 32 C.F.R. § 8.701(a).

While the appeal was pending before us, on August 17, 1992, the ASBCA issued the opinion the government argues the bankruptcy court should have awaited before ruling. That opinion determined that the United States owes Murdock approximately $4 million, minus a yet undetermined pro rata share of the unpaid principal and interest on the guaranteed loan the Navy made to Murdock. The ASBCA rejected the government's claim to a "loss adjustment" of

$7,597,860 that, if allowed, would indeed have wiped out the government's liability to Murdock and made the government Murdock's creditor. Treating the Federal Circuit's decision as "final and binding" on the fixed-price to cost-reimbursement/no fee contract issue, the ASBCA declared,

> Under a cost-reimbursement contract, the contractor has no obligation to continue performance after the funding limits are reached, whether the required product has been completed or not. Therefore, it does not appear that Murdock would have sustained a loss on the entire contract had it been completed under the terms of the NCAB decision, and there is no basis for application of a loss adjustment.

ASBCA Op. of Aug. 14, 1992, at 5.

## II

We must consider whether the August 1992 ASBCA decision moots the instant appeal. The bankruptcy court's decision, affirmed by the district court, simply denied the government's claims against the bankruptcy estate. This was based upon its interpretation of the Federal Circuit decision, as holding that there could be no net amount owing with respect to the ASROC contract to the government from Murdock. The ruling did not determine the net balance due from the government to Murdock; the court expressly deferred that to the ASBCA proceedings.

Because the government continued to contend, after the Federal Circuit decision, that the net balance from the obligations arising out of the ASROC contract was in the government's favor, it demanded that the bankruptcy court defer to the ASBCA proceedings. Now we have the ASBCA decision, confirming that there can be no net claim in favor of the government on the ASROC contract.[4] Of course, the ASBCA

---

3. It identifies the nature of this claim as follows:

   [W]hen the contracting officer accepts and pays for contractor performance, at least 80% of the payment due is withheld to liquidate outstanding (unliquidated) progress payments. The term "unliquidated progress payments," therefore refers to a particular type of contract financing advanced to the contractor

   on the basis of costs incurred, but which have not yet been recouped from payments due for final contract performance.
   Brief for Appellant at 38.

4. Only if the undetermined liability for unpaid principal and interest on the defaulted guaranteed loan could exceed the nearly $4 million otherwise owing under the ASBCA opinion –

opinion is subject to further review, including an appeal to the Federal Circuit; and the government continues to argue that the Federal Circuit's reference to a fixed cost contract termination clause entitled the government to the loss adjustment it claims would make it Murdock's creditor. Also, the final sum due Murdock has not been determined because of the remand to the contracting officer for certain determinations, and the Murdock bankruptcy proceeding is still ongoing. Further, the government makes claims on the non-ASROC contracts that are still pending in that proceeding. It acknowledges that it has no right to appeal with respect to those contracts, but it asks us to assume jurisdiction of them as "pendent" claims and to order the district court to defer to adjudication of those claims also through the ASBCA process. Considering all the circumstances we hold the appeal is not moot.

### III

■ It is important, we believe, to distinguish between two different bankruptcy court responsibilities: (1) to obtain, reduce to cash, and distribute all of the estate's assets, and (2) to quantify and categorize the estate's liabilities. *See generally In re American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir.1988). Although the bankruptcy court has the power to itself decide certain disputes regarding assets, often the trustee will have to pursue unliquidated claims the bankrupt has against third parties in other tribunals—*e.g.*, when there is entitlement to a jury trial or the third party is not amenable to process in the district. *See, e.g., St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700–01 (2d Cir.1989). There is no finite time limitation within which the trustee must complete its pursuit of assets of the bankruptcy estate. Partial distributions of cash on hand can be made to creditors, with additional distributions made later as the assets are collected.

■ Thus, when jurisdiction over disputed claims is placed by law in a specialized tribunal, we expect that the litigation over the trustee's claims to recovery will be conducted in that forum. *See, e.g., Hiser v. Pennsylvania Dep't of Public Welfare (In re St. Mary Hosp.)*, 125 B.R. 422, 431–32 (Bankr.E.D.Pa.1991) (invoking primary jurisdiction doctrine to require trustee to submit claim to state Office of Hearings and Appeals for resolution); *Burner v. Security State Bank (In re Burner)*, 109 B.R. 216, 227 (Bankr.W.D.Tex.1989) (holding that proper forum for debtor to challenge actions of co-executor of debtor's deceased husband's estate was state probate court, not bankruptcy court). The bankruptcy court in the instant case recognized that principle when it deferred quantification of the estate's claim against the government to the ASBCA process.[5]

### IV

■ The determination of creditors' claims against a bankruptcy estate stands on a different basis. Here the law contemplates that the bankruptcy court establish deadlines for filing creditors' claims. When the claim is contingent or unliquidated the bankruptcy court is to estimate the claims if it determines that awaiting quantification would unduly prolong the administration of the estate. 11 U.S.C. § 502(c) (current Code); 11 U.S.C. § 93(d) (1976)

could there be a net balance in favor of the government. Considering that the ASBCA decision allows interest on Murdock's claim against the government from October 14, 1981, and the parties stipulated that the total unpaid principal on the notes was $952,000, *see* ASBCA Op. of Aug. 14, 1992, at 6–7, a net balance in favor of the government appears impossible.

5. The instant contract was executed in 1971, before passage of the CDA, and so the CDA's jurisdictional commands do not apply. However, the contract did include, pursuant to ASPR § 7–203.12, a disputes clause requiring resort to

a dispute resolution mechanism similar to that ultimately enacted by the CDA. The trustee, of course, filed two claims with the ASBCA after the CDA was enacted. The Federal Circuit treated this as an election to utilize the CDA procedures. We see no need for an elaborate discussion of whether the CDA applies to all three claims. The specialized ASBCA forum has been invoked by the trustee, and the bankruptcy court has deferred to that process on quantification of the estate's claim against the government. There appears to be no dispute between the parties on this issue.

(former Act). The impetus here, of course, is the need to prioritize claims and make distributions within a reasonable time among the creditors entitled to payment of those assets the trustee has reduced to cash.

■ Of course, when a forum such as the ASBCA exists, which has special expertise applicable to determination of particular claims a creditor has against the bankruptcy estate, the bankruptcy court usually should defer to that forum. The Supreme Court outlined the approach to be followed in such cases as follows:

> The bankruptcy court normally supervises the liquidation of claims. But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision.

*Nathanson v. NLRB,* 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) (citations omitted).

The bankruptcy court in the instant case believed that it had discretion whether to defer to the ASBCA for the determination of whether the government had a viable claim as creditor. In exercising that discretion it noted and relied upon five criteria for deferral set out in *Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.),* 698 F.2d 775 (5th Cir.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983), which also involved government contracts and the ASBCA. Those criteria, as paraphrased and stated by the bankruptcy court, are as follows:

1) Resolution of the claims by a specialized tribunal would not impair the requirement that satisfaction of all claims against the bankrupt's estate should proceed in a central forum,

2) Technical and esoteric issues relating to government contracting law are present,

3) The specialized forum designed specifically to resolve government contract disputes may fulfill the needs for expertise, speed, and uniformity in resolving government contract disputes,

4) The bankruptcy court may not have authority to grant affirmative relief in excess of the amounts of the claim filed by the Government, and the contract dispute might have to be tried twice,

5) Congress has endorsed the transfer of particular disputes to specialized tribunals.

App. 130–31 (citing *Gary Aircraft,* 698 F.2d at 783–84).

*Gary Aircraft* held that, because these criteria were generally present in all government contracts cases, a rule of mandatory deferral was appropriate. 698 F.2d at 784. The bankruptcy court in the case before us acknowledged that most of these criteria were satisfied and favored deferral, but stated that at least the third and fourth criteria had to be examined on a case-by-case basis. It considered the instant situation unusual because the Federal Circuit had ruled on the central issue and deference to the ASBCA would likely involve "more years of litigation." App. at 136. Therefore, it declined to defer.

Because of the bankruptcy court's duty to timely determine and quantify creditors' claims, we believe the bankruptcy court correctly held that it had discretion to defer or to determine itself whether the government had a viable claim against the bankruptcy estate. Thus, our review is to determine whether the bankruptcy court abused its discretion in failing to hold off determination of this claim until the ASBCA proceedings were completed.

■ We must make our determination in the context of the facts of the specific case. The government's brief makes the following representation of the status of Murdock's bankruptcy estate:

> By the end of 1977, the claims of secured creditors and lienholders were resolved and the estate lacked assets to pay general unsecured creditors, the largest of which was the United States. The only potential estate asset is the debtor's AS-ROC contract claim against the Navy,

which is currently pending before the ASBCA.

Brief for Appellant at 19–20. The trustee acknowledges that until the favorable Federal Circuit decision there had been no activity on the government's claim "because there were no monies in the estate to pay the claims." Brief for Appellee at 11. Accepting as true that the ASROC contract claim against the government is Murdock's only asset, absent a determination that the government owes Murdock a net balance on the ASROC contract after credit for offsets, there can be no recovery by the government on any claim it might have against Murdock's bankruptcy estate. Thus, if the government somehow convinces the Federal Circuit to overturn the ASBCA's latest decision and to accept all of its arguments, it merely succeeds in wiping out the estate's only potential asset. Any excess owed it by Murdock would be uncollectible. In these circumstances we see no need to decide whether the bankruptcy court abused its discretion in ruling against the government's claim, because any error would be harmless.

## V

 The United States asks us to take pendent appellate jurisdiction of an otherwise unappealable bankruptcy court order refusing to defer to the ASBCA on a number of other claims not directly involving the ASROC contract. Such pendent appellate jurisdiction may be exercised only in extraordinary cases in which the issues raised in the appealable order under consideration and the nonappealable interlocutory order substantially overlap, and failure to rule upon the nonappealable issue would needlessly expend judicial resources. *See McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1104–05 (2d Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990). We can envision only one theoretical possibility that could make this issue viable: a net recovery in favor of Murdock on the ASROC contract—in accord with the latest ASBCA decision—and a determination on the non-ASROC contracts making the government a creditor of Murdock. From the little before us it appears the

trustee is claiming damages against the government with respect to the non-AS-ROC contracts because the termination of the ASROC contract rendered Murdock incapable of completing them. The bankruptcy court has made no final determination of the non-ASROC claims, and it has also stated that "the court retains jurisdiction to re-examine and disallow or modify claims at any time during the administration when the question is duly brought to its attention," (quoting J. MacLachlan, *Handbook of the Law of Bankruptcy* 83 (1956) (citing sections 2(a)(2) and 57(k) of the Act)). App. at 139. In view of all of this, we decline to assert jurisdiction over the non-ASROC claims.

AFFIRMED.