**FRANKLIN SAVINGS CORPORATION and Franklin Savings Association, Plaintiffs,**

v.

**OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF THE TREASURY, and United States of America, Defendants.**

Civ. A. No. 95–2039–GTV.

United States District Court, D. Kansas.

Aug. 11, 1997.

Order Granting Reconsideration Sept. 11, 1997.

R. Pete Smith, Johnathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, Jennifer K. Wilson, Lawson, MO, for plaintiff.

J. Amanda Machen, Martin Jefferson Davis, Arthur R. Goldberg, U.S. Dept. of Justice, John T. Stemplewicz, Anne L. Weismann, U.S. Dept. of Justice, Civil Division, Washington, DC, Joann E. Corpstein, Topeka, KS, for Office of Thrift Supervision.

Janice M. Karlin, Office of U.S. Attorney, Arthur R. Goldberg, U.S. Dept. of Justice, Jeffrey Axelrad, John T. Stemplewicz, U.S. Dept. of Justice, Civil Division, James J. Faughnan, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for defendant.

Johnathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, for debtor.

Richard D. Ralls, Farchmin Ralls, P.C., Kansas City, MO, for movant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiffs bring this action alleging that the Office of Thrift Supervision's appointment of a conservator and liquidating receiver for Franklin Savings Association constitutes a compensable taking under the Fifth Amendment of the Constitution. The case is before the court on defendants' motion to dismiss plaintiffs' substituted amended counterclaim

complaint or, in the alternative, defer consideration to the United States Court of Federal Claims (Doc. 91).[1] For the reasons set forth below, the court orders the case transferred to the Court of Federal Claims.

## I. Background

The court need not provide an exhaustive explanation of the events culminating in this lawsuit. Several prior decisions have recounted the saga of Franklin Savings in thorough detail. *See Franklin Sav. Ass'n v. Office of Thrift Supervision*, 742 F.Supp. 1089 (D.Kan.1990), *rev'd*, 934 F.2d 1127 (10th Cir.1991) (*Franklin I*), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466 (10th Cir.1994) (*Franklin II*); *In re Franklin Sav. Corp.*, Bankr.No. 91–41518, 1994 WL 114652 (Bankr.D.Kan. Jan. 18, 1994); *Franklin Sav. Corp. v. United States*, 970 F.Supp. 855 (D.Kan.1997). This court, therefore, will offer only a brief overview of the case.

Prior to its seizure and liquidation by federal regulators, Franklin Savings Association ("FSA") functioned as a state chartered stock savings and loan association. Approximately 94% of FSA's stock is owned by its holding company, Franklin Savings Corporation ("FSC"), a corporation organized and existing under Kansas law.

In 1990, the director of the Office of Thrift Supervision determined that FSA was in an unsafe and unsound condition to transact business and appointed the Resolution Trust Corporation ("RTC") as conservator of the thrift. FSA and FSC subsequently filed a lawsuit under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1461 *et seq.*, seeking to remove the conservator. Al-

though the district court ruled in favor of FSA and FSC, the Tenth Circuit reversed, holding that the administrative record supported the Office of Thrift Supervision's decision to appoint a conservator. *Franklin I*, 934 F.2d at 1150–51.

In September 1992, the director of the Office of Thrift Supervision converted the RTC's role with respect to FSA from conservator to receiver and ordered the RTC to liquidate the savings association. Once again, both FSA and FSC commenced a lawsuit challenging the agency's actions. The Tenth Circuit, affirming the district court's dismissal of the case, held that the Office of Thrift Supervision's imposition of a receivership is not subject to judicial review. *Franklin II*, 35 F.3d at 1469–71.

The instant action has its genesis in a counterclaim complaint that FSC initiated in January 1993 in a bankruptcy court adversary proceeding.[2] The matter arose there because FSC had filed for Chapter 11 relief in bankruptcy court eighteen months earlier. In the original adversary counterclaim complaint, FSC sought damages under the Tucker Act, 28 U.S.C. § 1491, on the theory that the Office of Thrift Supervision's imposition of a conservator and receiver on FSA constituted an unconstitutional physical and regulatory taking. In March 1995, this court approved the recommendation of the bankruptcy court that the bankruptcy reference be withdrawn and the adversary counterclaim complaint be transferred to the district court. After the case was transferred to this court, FSC amended its complaint by (1) naming FSA as a counterclaim plaintiff, and (2) asserting an additional takings claim based on the allegedly unconstitutional appointment of the director of the Office of Thrift Supervision.[3]

---

**1.** Defendants' motion to dismiss or defer (Doc. 91) supersedes their previous motion (Doc. 12) requesting the identical relief.

**2.** FSC captioned the bankruptcy court pleading as a counterclaim complaint because FSC accompanied the counterclaim with an objection to the Office of Thrift Supervision's claim against the bankruptcy estate. Fed. R. Bankr.P. 3007 explicitly sanctions this procedure: "If an objection to a claim is joined with a demand for relief

of the kind specified in Rule 7001, it becomes an adversary proceeding."

**3.** In a separate action, also originating in the bankruptcy court as an adversary complaint, plaintiffs sued the Federal Deposit Insurance Corporation and the United States for damages arising out of the government's allegedly negligent management and operation of FSA. Plaintiffs predicated that action on the Federal Tort Claims Act ("FTCA") and the Administrative Procedures Act ("APA"). The court dismissed the

## II. Discussion

### A. Jurisdiction

The court first must address whether it has jurisdiction to entertain this dispute. Under normal circumstances, constitutional claims against the federal government seeking more than $10,000 in damages rest within the exclusive jurisdiction of the United States Court of Federal Claims. 28 U.S.C. §§ 1346(a)(2) & 1491(a)(1). There is an exception to this rule, however, for claims arising in a bankruptcy context. "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(b).

■ A proceeding "arises under title 11" (i.e., is a "core proceeding") if the requested relief is predicated on a provision of title 11. Gardner v. United States (In re Gardner), 913 F.2d 1515, 1517–18 (10th Cir.1990). Actions that do not depend on the bankruptcy laws for their existence and that could proceed in another court are not core proceedings. Id. (citing In re Wood, 825 F.2d 90, 96 (5th Cir.1987)). None of the claims at issue here arise under title 11.

In assessing whether a claim arises in a case "related to" title 11, the Supreme Court has embraced a broad test that effectuates Congress' intent "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). The Court noted:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* .... Thus, the proceeding need not necessarily be against the debtor

or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Id. at 308 n. 6, 115 S.Ct. at 1499 n. 6 (alterations in original). The Supreme Court also observed that the jurisdiction of bankruptcy courts extends more broadly in Chapter 11 reorganizations than it does in Chapter 7 liquidations. Id. at 310, 115 S.Ct. at 1500.

### 1. FSC's claims

■ With this background in mind, the court now turns to the plaintiffs' individual claims. Plaintiffs' factually specific counterclaim complaint, as amended, appears to assert two different categories of takings claims. The first group revolves around FSC's loss of control and voting rights in FSA. The second group focuses on the alleged uncompensated physical and regulatory takings arising out of the Office of Thrift Supervision's imposition of a conservatorship and receivership on FSA. Encompassed within this second group is a claim that the allegedly unconstitutional appointment of the Office of Thrift Supervision's director entitles plaintiffs to monetary relief.

Defendants concede that the court has bankruptcy jurisdiction over debtor FSC's loss of control/voting rights takings claims pursuant to 28 U.S.C. § 1334(b). Defendants also acknowledge that the Office of Thrift Supervision's filing of a proof of claim in FSC's bankruptcy proceeding served as a waiver of sovereign immunity for those claims under 11 U.S.C. § 106(b). Defendants insist, however, that the court may not exercise jurisdiction over plaintiffs' physical and regulatory takings claims. Defendants contend that these latter claims are the exclusive property of non-debtor FSA and may not be asserted in this court by either FSA or FSC.

Defendants are correct that any claims specifically arising out of the seizure and liquidation of FSA belong to FSA and not to

case on June 17, 1997, see Franklin Sav., Corp. v. United States, 970 F.Supp. 855 (D.Kan.1997), and it is now pending on appeal in the Tenth Circuit.

its shareholders. *See* 12 U.S.C. § 1821(d)(2)(A)(i) ("The [Federal Deposit Insurance] Corporation shall, as conservator or receiver, and by operation of law, succeed to all rights ... of the insured depository institution and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.") Nevertheless, there is nothing to prevent FSC, as a 94% owner of FSA's outstanding shares, from asserting such claims in a derivative capacity.[4] The court described in detail the appropriateness of such a procedure when ruling on plaintiffs' FTCA and APA claims. *See Franklin Sav. Corp.*, 970 F.Supp. at 861–62. Moreover, the outcome of this litigation will have an unequivocal effect on FSC's estate now being administered in bankruptcy, thereby satisfying the *Celotex* test for "related to" jurisdiction.

■ Defendants aver that the unique procedural posture of this case renders *Celotex* inapplicable. They contend that 11 U.S.C. §§ 109(b)(2) & (d), which preclude domestic savings institutions from bankruptcy eligibility, act as a bar to FSC's derivative suit. The court disagrees.

■ The bankruptcy code excludes banking institutions from its coverage because alternative provision is made for their liquidation under a variety of regulatory laws. 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 109.03[3][b] (15th ed. rev.1997). Sections 109(b)(2) and (d) make clear that bankruptcy courts may not exercise jurisdiction over banks for purposes of liquidation or reorganization. *Bankers Trust Sav. & Loan Ass'n v. Travis (In re Bankers Trust Co.)*, 566 F.2d 1281, 1286 (5th Cir.1978). By natural exten-

sion, a debtor bank holding company may not invoke the bankruptcy court's jurisdiction over a banking institution by arguing that the bank is a mere asset of the holding company's bankruptcy estate. *In re First Fin. Enters., Inc.*, 99 B.R. 751, 754–55 (Bankr.W.D.Tex.1989) (citing *Peoples Bankshares, Ltd. v. Department of Banking (In re Peoples Bankshares, Ltd.)*, 68 B.R. 536, 539–40 (Bankr.N.D.Iowa 1986)). Indeed, such a back door mechanism would undermine the intent of sections 109(b)(2) and (d).

In the case at bar, however, FSC's derivative suit implicates none of the concerns behind Congress' exclusion of banking institutions from bankruptcy eligibility. FSC is not attempting to reorganize or liquidate FSA in this court. FSC neither seeks to enjoin any regulatory action against FSA nor stave off any FSA creditors. FSC's sole objective is to redress an alleged injury to FSA that FSA is otherwise unable to bring on its own behalf. This court, sitting in bankruptcy, has jurisdiction over such a derivative claim.[5]

## 2. FSA's claims

Defendants also argue that the court has no power to hear FSA's takings claims. Plaintiffs respond that the court may entertain such claims pursuant to its "related to" jurisdiction under 28 U.S.C. § 1334(b) as well as its supplemental jurisdiction under 28 U.S.C. § 1367(a). The court need not resolve this issue.

It is undisputed that FSA's takings claims, standing alone, would rest within the exclusive jurisdiction of the Court of Federal Claims. It is equally undisputed that, even if the unique procedural circumstances of this

---

4. Derivative claims, of course, are not always appropriate in a bankruptcy context. A corporation's bankruptcy filing, for example, cuts off a shareholder's ability to initiate a derivative action inasmuch as the bankruptcy petition creates an estate for the benefit of creditors that encompasses "all legal or equitable interests of the debtor in the property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The bankruptcy estate includes all legal claims owned by the corporate debtor, including shareholder derivative actions. *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984). This concern is not implicated in the case at bar, however, because the derivative action is not

being maintained on behalf of a debtor corporation. To the contrary, it is the debtor that is prosecuting the derivative suit on behalf of a non-debtor financial institution.

5. FSC maintains that it may assert the uncompensated physical and regulatory takings claim in a direct as well as a derivative capacity. The court rejects this argument for the identical reasons it identified in plaintiffs' FTCA/APA action. *See Franklin Sav. Corp.*, 970 F.Supp. at 862–63. FSC may pursue that takings claim exclusively in a derivative capacity.

dispute confer authority on this court to adjudicate those claims, such jurisdiction would be merely concurrent with that of the Court of Federal Claims. As discussed below, the Court of Federal Claims is far more equipped to handle this proceeding and deferring the matter to that court would avoid potentially needless inconsistencies in Tucker Act jurisprudence.

## B.  Deferral to Court of Federal Claims

■ Although Congress empowered district courts sitting in bankruptcy with plenary authority over a bankrupt's estate, Congress also explicitly stated that the courts, in the interest of justice, may abstain from hearing a particular proceeding. 28 U.S.C. § 1334(c)(1). The decision whether to rule on a particular claim or defer the issue to another tribunal for litigation is a matter committed to the court's sound discretion. *United States v. Bagley (In re Murdock Mach. & Eng'g Co.)*, 990 F.2d 567, 572 (10th Cir.1993). There are multiple criteria that aid the court in reaching this determination. They include:

(1) Resolution of the claims by a specialized tribunal would not impair the requirement that satisfaction of all claims against the bankrupt's estate should proceed in a central forum;

(2) Technical and esoteric issues are present;

(3) The specialized forum, designed specifically to handle the type of claims at issue, would fulfill the needs for expertise, speed, and uniformity in resolving the dispute; and

(4) Congress has endorsed the transfer of the particular dispute at issue to a specialized tribunal.

*Id.* at 572; *accord Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1579 n. 15 (Fed. Cir.1995). Applying these factors to the case at bar, the court finds that deferral of plaintiffs' takings claims to the Court of Federal Claims is warranted.

There is no concern that debtor FSC's creditors will be treated unfairly by a transfer of plaintiffs' constitutional claims to an alternative forum. All claims against FSC's estate still will be satisfied in this court. As defendants correctly note, there is a fundamental distinction between *satisfaction* of claims and *liquidation* of claims.

The primary purpose of a proceeding in bankruptcy is to ensure that all creditors are treated fairly. This primary purpose makes it absolutely essential that all claims be satisfied in one forum. The ancillary jurisdiction of a bankruptcy court, however, involves more nearly the administrative convenience of settling all disputes in a single forum; it just is not as vital to the purpose of bankruptcy. So, for example, we are told that in proper circumstances bankruptcy courts should defer unsettled questions of state law to state courts. Furthermore, ... a bankruptcy court should defer a complicated, technical dispute to a specialized forum.

*Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.)*, 698 F.2d 775, 783 (5th Cir.1983) (internal footnote and citations omitted). Once the Court of Federal Claims liquidates (i.e., adjudicates) plaintiffs' takings claims, the parties will look to this court for satisfaction of any judgment inuring directly to the benefit of debtor FSC. *See id.*

Moreover, transferring this case to the Court of Federal Claims will preserve the uniformity in federal takings jurisprudence that Congress sought in originally creating the Court of Federal Claims and Federal Circuit Court of Appeals. *See United States v. Hohri*, 482 U.S. 64, 71–72, 107 S.Ct. 2246, 2251–52, 96 L.Ed.2d 51 (1987) (motivating concern of Congress in creating Federal Circuit was to provide uniform, prompt, and definitive answers to legal questions in the specific areas of law discussed in the Tucker Act). The resolution of plaintiffs' claims will entail a complex analysis of the government's potential liability for actions of federal regulators overseeing troubled financial institutions. Considering the hundreds of billions of dollars at stake on this issue, the need for a consistent body of law is particularly acute. The Court of Federal Claims is well-suited to handle such a task. *See generally Plaintiffs in All Winstar–Related Cases v. United States*, 35 Fed. Cl. 707 (1996) (noting the pendency of 120 cases in the Court of Feder-

al Claims involving savings and loan litigation arising out of FIRREA).

If this court opted to retain jurisdiction over plaintiffs' claims, any appeal would go to the Tenth Circuit, thereby creating the potential for inconsistent judgments in the area of federal takings law.[6]  As the court observed above, such an outcome is exactly what Congress sought to avoid in developing a comprehensive and exclusive judicial arrangement for the disposition of such claims.

Finally, the court notes that neither side will be prejudiced by a transfer of the case at this time.  Although plaintiffs filed their counterclaim complaint more than four years ago, no discovery has been conducted nor has the court ruled on any substantive issues.  The pre-trial motions over which no genuine material facts exist have been fully briefed.  Accordingly, the parties should incur only minor delay as a result of this transfer.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motions to defer consideration of this case to the United States Court of Federal Claims (Docs. 12 & 91) are granted.

IT IS FURTHER ORDERED that the case is hereby transferred to the United States Court of Federal Claims.  The clerk is directed to take all necessary steps to complete the transfer.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's motion for reconsideration (Doc. 102) of the court's August 11, 1997 Memorandum and Order transferring the case to the United States Court of Federal Claims.  Plaintiffs seek reconsideration only of the transfer of the Office of Thrift Supervision's proof of claim and plaintiff's objection to that claim; plaintiffs do not take issue with the court's transfer of their takings claim.  For the reasons set forth below, plaintiffs' motion is granted.

This action originally arose in the United States Bankruptcy Court for the District of Kansas wherein plaintiff Franklin Savings Corporation ("FSC") had petitioned for Chapter 11 relief in July 1991.  Four months later, the Office of Thrift Supervision ("OTS") filed two proof of claims against FSC's bankruptcy estate asserting that the corporation is indebted to the federal government for approximately $272 million.  In October 1992, FSC responded to the OTS's actions by filing an "objection and counterclaim complaint" in which FSC (1) objected to the OTS's proof of claim, and (2) asserted a counterclaim against the OTS and the United States seeking damages for an allegedly compensable taking arising out of the OTS' appointment of a conservator and liquidating receiver for Franklin Savings Association.  In January 1994, on the recommendation of the bankruptcy judge, this court withdrew the bankruptcy reference and transferred the entire case to the district court.

In its August 11, 1997 opinion, the court ruled that, in the interest of preserving uniformity in federal takings jurisprudence, FSC's Fifth Amendment takings claim should be transferred to the Court of Federal Claims.  Rather than deferring only the takings claim, however, the court inadvertently transferred the entire case.  As plaintiffs correctly point out, the "Court of Federal Claims is a creature of statute, and its power is limited to what Congress has expressly given it."  *Martin v. Secretary of Health & Human Servs.*, 62 F.3d 1403, 1405 (Fed.Cir.1995).  Disputes revolving around the allowance or disallowance of bankruptcy claim objections are inherently equitable in nature, *Liebmann v. Brown (In re Bonded Jewelry Ctr.)*, 206 B.R. 381, 386 (Bankr. D.Md.1997), and thus fall outside the jurisdiction of the Court of Federal Claims.  *See Bowen v. Massachusetts*, 487 U.S. 879, 905, 108 S.Ct. 2722, 2737, 101 L.Ed.2d 749 (1988)

---

**6.**  Under normal circumstances, any appeal of a constitutional claim against the United States, regardless of the amount at issue, would go to the Federal Circuit Court of Appeals.  *See* 28 U.S.C. § 1295(a).  However, this court, sitting in bankruptcy, has jurisdiction over plaintiffs' claims pursuant only to 28 U.S.C. § 1334(b), a statute for which appeals must be taken to the regional court of appeals.

("[T]he Court of Claims has no power to grant equitable relief."). Moreover, permitting the Court of Federal Claims to entertain the OTS claim objections would violate the automatic stay provisions set out in 11 U.S.C. § 362(a).

The court's discussion in its prior opinion of the distinction between satisfaction and liquidation of claims underscores the fact that the court did not intend to transfer the entire case to the Court of Federal Claims. The court intended only that plaintiffs' Fifth Amendment takings claim be transferred.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiffs' motion for reconsideration (Doc. 102) is granted.

IT IS FURTHER ORDERED that the only matter transferred to the Court of Federal Claims is plaintiffs' Fifth Amendment takings claim. The proof of claim filed by the OTS and objected to by plaintiffs remains in this court.

**IT IS SO ORDERED.**