No. 71,562

In the Matter of the Liquidation of CEDAR VALE STATE BANK, CEDAR VALE, KANSAS, a Kansas Banking Corporation.

(894 P.2d 816)

Opinion filed April 21, 1995.

*J. Greg Kite*, of Wichita, argued the cause and was on the briefs for appellants.

*Matthew D. Flesher*, of Morrison & Hecker, of Wichita, argued the cause, and *Victor S. Nelson* and *Jack C. Marvin*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The Federal Deposit Insurance Corporation (FDIC), as receiver for the insolvent Cedar Vale State Bank (CVSB), petitioned the Chautauqua County District Court for termination of its receivership. CVSB's shareholders filed a general objection to termination without specifying the precise grounds for their objections. The basis for objection, as determined by the court upon questioning CVSB counsel, was that FDIC had breached its fiduciary duty to the shareholders and was negligent towards

the shareholders by not considering a proposed merger with the Bank of Commerce and Trust in Wellington. The district court granted summary judgment to FDIC, concluding *inter alia* that the claims of the stockholders, if available at all, were subject to exclusive federal jurisdiction. We agree and affirm.

On January 21, 1988, the Kansas Bank Commissioner declared CVSB insolvent. Under the provisions of K.S.A. 9-1907, FDIC was appointed as receiver for CVSB. FDIC executed a purchase and assumption agreement with Chisholm Trail State Bank under which the Chisholm Trail State Bank agreed to, and did, purchase certain assets and liabilities of CVSB. FDIC then sold CVSB's remaining assets to FDIC in its corporate capacity (FDIC-Corporate).

CVSB is owned by Cedar Vale Bank Holding Company, which in turn is wholly owned by W.C. Long, Jr. W. C. Long, Jr. also owns Sumner County Bancshares, Inc., which is the parent holding company of the Bank of Commerce and Trust Company in Wellington. It is the alleged refusal of FDIC to consider merger of CVSB and the Bank of Commerce and Trust Company that forms the basis of CVSB's claim against FDIC. W. C. Long, Jr., is president, CEO, and sole stockholder of the Cedar Vale Bank Holding Company and Sumner County Bancshares, Inc. Any reference to CVSB shareholders necessarily refers to W. C. Long, Jr.

Within two years from the declaration of insolvency and the sale of CVSB's assets, Cedar Vale Bank Holding Company, Sumner County Bancshares, Inc., and W. C. Long, Jr., individually and/or derivatively on behalf of the stockholders of the Cedar Vale State Bank and the Bank of Commerce and Trust Company brought suit in the Federal District Court for the District of Kansas against the State of Kansas, for and on behalf of the State Banking Department; W. Newton Male, State Bank Commissioner; and the United States of America, for and on behalf of the Federal Deposit Insurance Corporation; Charles E. Thacker, FDIC Regional Director; Raymond K. Pritchett, FDIC Assistant Regional Director; and Michael W. Roe, FDIC Review Examiner.

The federal suit dealt extensively with the alleged refusal of FDIC to consider a proposed merger of the CVSB with the Bank

of Commerce and Trust Company. The very first cause of action alleged in the amended petition is entitled "DENIAL OF A 'MERGER.'" In this count, plaintiffs alleged that FDIC, acting in both its corporate and receivership capacities through its agents, representatives, and employees, and the FDIC officers above named, individually, negligently, and in reckless disregard and indifference did, with willful neglect of the mandates of the applicable state and federal banking statutes and laws, fail and refuse to approve a merger of CVSB and the Bank of Commerce and Trust Company. Plaintiffs alleged that had the merger taken place as requested, the result would have been that CVSB would have had primary capital above the four percent Kansas capital reduction requirement for agriculture and oil banks pursuant to K.S.A. 1987 Supp. 9-901b as well as above the soon-to-be-enacted Kansas legislative requirement of zero percent for all banks effective March 3, 1988.

Several other causes of action were advanced by the plaintiffs, including counts for equitable estoppel, denial of due process, denial of agricultural loan loss amortization, and tortious interference with business advantage. Specifically, in the seventh cause of action, the plaintiffs claimed that the

"FDIC, acting in its 'receivership' capacity through its agents, representatives and employees, and the FDIC officials above named, individually and negligently and in a reckless disregard and indifference, and with willful neglect of the mandates of the applicable state and federal banking statutes and laws, . . . breached the fiduciary duty owed to the depositors, creditors and stockholders of the Cedar Vale State Bank pursuant to K.S.A. 9-1906(a), K.S.A. 9-1907, and 12 U.S.C. § 1821(d), by failing and refusing to allow the merger of the Cedar Vale State Bank, Cedar Vale, Kansas and the Bank of Commerce & Trust Co., Wellington, Kansas."

Plaintiffs asked for the following relief:

"A. Lost bank earnings in the amount of $150,000.00/yr. for two (2) years or $300,000.00;

"B. Lost investment in the amount of $1,400,000.00;

"C. Lost tax benefits in the amount of $120,000.00/yr. for two (2) years or $240,000.00;

"D. Lost salary for bank Chairman of the Board and President in the amount of $27,000.00/yr. for two (2) years or $54,000.00;

"E. Lost business reputation in the amount of $100,000.00 for claims totaling $2,094,000.00;

"F. Reasonable attorneys fees and expenses as prescribed by 42 U.S.C. § 1988;

"G. The costs of this action; and

"H. For such other and further relief as the Court deems just and equitable."

The federal district court granted FDIC summary judgment. The court found that under K.S.A. 9-1724, the State Banking Commissioner is authorized to investigate and approve proposed mergers of state banks. However, as the federal district court notes, the statute expressly conditions such investigation and approval upon the prior submission of an explicit application for bank merger. The banks seeking merger must include a certified copy of the merger agreement approved by the boards of both of the merged banks.

As the federal district court noted:

"It is uncontroverted that neither [W.C. Long, Jr.,] nor Cedar Vale State Bank ever filed any application pursuant to K.S.A. 9-1724. In none of [Long's] 1987 letters to the state did Long ever ask the state banking commissioner to do anything—to take any particular action. Instead, this correspondence is simply composed of 'for your information' type cover letters, which enclose copies of his letters to the FDIC.

"Nor is there any evidence that Cedar Vale State Bank ever formally applied with the state banking commissioner for permission to amortize the bank's agricultural loans. There is good reason for this lack of evidence: amortization of agricultural loans is not a matter within the jurisdiction of the state banking authorities. It is a matter solely under the jurisdiction of the FDIC. Under 12 U.S.C. § 1923(j), the FDIC is given the responsibility for determining banks which are eligible for amortization. The state has nothing to do with it.

"Almost all of the plaintiff's claims (whether couched as breach of duty, failure to investigate, etc.) are tied directly to the failure to approve Long's merger and amortization plans. The lack of any compliance with the procedures for applying for merger under state law, and the exclusive federal jurisdiction over amortization, are fatal to all of these claims.

. . . .

"The United States has also moved for summary judgment, contending that the plaintiff's claims against it are barred by the discretionary exception to the Federal Tort Claims Act, 12 U.S.C. § 2680. See *Cooper v. American Automobile Ins. Co.*, 978 F.2d 602 (10th Cir. 1992). The court agrees. The essence of the plaintiffs' case is that the government wrongfully refused to approve the requests for merger and amortization. These are functions which are discretionary in nature and hence barred by the Federal Tort Claims Act."

After further discussion, the court stated:

"The court finds that the Federal Tort Claims Act bars the present action against the United States. Here, the FDIC was vested with discretion in determining whether to permit the merger of Cedar Vale State Bank with the Wellington Bank of Commerce, and whether to permit the Cedar Vale State Bank to amortize its agricultural loans. The relevant statutes and regulations do not mandate the granting of request for merger or agricultural amortization to anyone who asks for them. Instead, the law grants the FDIC broad authority in deciding whether to approve such proposals. This is precisely the kind of decision grounded in public policy which the discretionary function exemption was intended to protect."

Summary judgment was entered on behalf of FDIC and all defendants on December 14, 1992. This decision was appealed to and affirmed without opinion by the Tenth Circuit Court of Appeals. 19 F.3d 1443 (10th Cir. 1994).

On April 2, 1993, FDIC filed its petition in the Chautauqua County District Court for termination of the CVSB receivership, indicating that losses incurred would be in the amount of $3,273,926.79 after application of the funds from the liquidation of the assets. FDIC alleged and CVSB agreed that no excess funds would be available for the receivership to distribute either to the creditors or stockholders of the bank. CVSB lodged no objections to the FDIC accounting and admitted that all claims of the receivership entitled to priority and all depositors' claims, other than those to which FDIC Corporate is subrogated, have been paid.

In response to the petition for termination, CVSB shareholders filed what may be characterized as a general objection, without presenting any specific objections. The trial court, however, pressed the shareholders and determined that the sole reason for lodging the objections to discharge was the shareholders' allegation that FDIC as receiver failed to consider or approve of merger with Bank of Commerce and Trust Company in Wellington, thereby breaching its fiduciary duty to the shareholders. The shareholders further claim that FDIC as receiver negligently performed its duties by failing to inform them of the order approving the sale of assets and liabilities of CVSB. According to the shareholders, their claims involve application of K.S.A. 9-1906, which provides:

"(a) The receiver, under the direction of the commissioner, shall take charge of any insolvent bank or trust company and all of its assets and property, and *liquidate the affairs and business thereof for the benefit of its depositors, creditors and stockholders.*" (Emphasis added.)

In granting summary judgment to FDIC, the court concluded:

"The Stockholders' objections to the Receiver's petition to confirm the acts of FDIC-Receiver and FDIC-Corporate raise issues alleging negligence, misfeasance, or malfeasance, arising out of acts that occurred in January, 1988. Most of the theories underlying stockholders' objections were denied in the United States District Court for the District of Kansas in the case of *Cedar Vale Bank Holding Company, et al. v. State of Kansas, et al.,* Case No. 89-1654-PFK. Legitimate or not, objections before this court not raised in 89-1654-PFK are collaterally estopped as well as barred by the pertinent statute of limitations. The Receiver has complied with all orders of this court. *Claims of malfeasance or misfeasance against the FDIC in connection with obtaining or carrying out said orders, even if not barred, must be litigated in the United States District Court.* The Stockholders' request for hearing on whether the actions of the FDIC-Receiver and FDIC-Corporate should be approved is denied." (Emphasis added.)

The relief sought by the shareholders in this case sounds in tort. Shareholders contend that FDIC's failure to consider or approve a merger with the bank of choice of CVSB was a breach of duty imposed by Kansas law. Specifically, shareholders point to the provisions of K.S.A. 9-1905, wherein there is a duty imposed upon a state-appointed receiver of an insolvent or critically undercapitalized bank to liquidate the affairs and business thereof *for the benefit of its depositors, creditors, and stockholders.*

The shareholders argue that the state court has jurisdiction over their objections to discharge because their claim arises under the state law exception contained within the federal statute creating FDIC, 12 U.S.C. § 1819(b)(2)(D) (Supp. V, 1993). It is true that § 1819 excepts from federal jurisdiction certain claims that may be brought against the FDIC as receiver of a state bank. However, those claims subject to the state law exception involve only pre-closing rights against the state-insured depository institution or obligation owing to depositors, creditors, or stockholders by the state-insured depository institution. 12 U.S.C. § 1819(b)(2)(D). The shareholders' claims in this case involve neither pre-closing rights nor obligations owing to stockholders by the state-insured depository institution.

Under the predecessor statute, 12 U.S.C. § 1819 (Fourth) (1988), any suit in which the FDIC was a party as a receiver and which involved only the rights or obligations of depositors, creditors, and stockholders under state law was deemed not to arise under the laws of the United States, thus divesting federal courts of jurisdiction. See *Federal Deposit Ins. Corp. v. Sumner Fin. Corp.*, 602 F.2d 670, 674-77 (5th Cir. 1979); *Gross v Federal Deposit Ins. Corp.*, 613 F. Supp. 79, 82 (D. Kan. 1985). The court in *Sumner* found that when acting as a receiver of an insolvent state bank, the FDIC possesses all the rights, powers, and privileges granted to the receivers by state law and is to be treated as any other receiver would be. 602 F.2d at 679.

In 1989, however, Congress passed the Financial Institution Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1819(b)(2)(B), which expanded federal jurisdiction in suits where the FDIC is a party. See *Matter of Meyerland Co.*, 960 F.2d 512, 514-15 (5th Cir. 1992) (finding that the power conferred by FIRREA to invoke federal jurisdiction and remove from state court is substantial). The language of the state law exception in 12 U.S.C. § 1819 is now more restrictive. Under the more recent version, the exception applies only to those actions which involve pre-closing rights against the state-insured depository institution or obligations owing to depositors, creditors, or stockholders by the state-insured depository institution. 12 U.S.C. § 1819(b)(2)(D)(ii). As a result, *Sumner* and the other cases cited by the stockholders, which rely on the broader state law exception in 12 U.S.C. § 1819 (Fourth), are not of great value.

A plain reading of 12 U.S.C. § 1819(b)(2)(D)(ii) reveals that in order for the exception to apply, the claims must involve pre-closing rights against the depository institution or obligations owed by the institution, which in this case would be CVSB, to depositors, creditors, or stockholders. The stockholders' claims in this case are not pre-closing claims against CVSB, nor do they arise out of obligations owed by CVSB to its stockholders; rather, the claims involve post-closing tort claims against the FDIC as receiver for alleged breach of its fiduciary duty. As such, these claims, even though asserted against the FDIC as a receiver, do

not fall within the exception in 12 U.S.C. § 1819(b)(2)(D)(ii). Therefore, these claims arise under federal, not state, law. Since the shareholders' claims do not fall under the state law exception, the question still remains whether such claims are subject to exclusive federal jurisdiction.

In *FDIC v. Meyer*, 510 U.S. \_\_\_\_, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994), the Supreme Court discussed the relationship between the Federal Tort Claims Act and the Federal Savings and Loan Insurance Corporation's (FSLIC) organic statute, 12 U.S.C. § 1725(c)(4) (repealed 1989). In *Meyer*, a discharged officer of a California-chartered savings and loan association filed suit against the FDIC for his termination without hearing in what he claimed was a violation of his due process rights. It should also be noted that FSLIC was abolished by FIRREA and FDIC was substituted for FSLIC in the *Meyer* lawsuit.

The *Meyer* court noted:

"When Congress created FSLIC in 1934, it empowered the agency '[t]o sue and be sued, complain and defend, in any court of competent jurisdiction.' 12 U.S.C. § 1725(c)(4) (repealed 1989). By permitting FSLIC to sue and be sued, Congress effected a 'broad' waiver of FSLIC's immunity from suit. [Citation omitted.] In 1946, Congress passed the FTCA [Federal Tort Claims Act] which waived the sovereign immunity of the United States for certain torts committed by federal employees. 28 U.S.C. § 1346(b). In order to 'place torts of "suable" agencies . . . upon precisely the same footing as torts of "nonsuable" agencies,' [citation omitted], Congress, through the FTCA, limited the scope of sue-and-be-sued waivers such as that contained in FSLIC's organic statute. The FTCA limitation provides:

'The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.' 28 U.S.C. § 2679(a).

Thus, if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue-and-be-sued clause." 127 L. Ed. 2d at 317-18.

In a footnote, the Court noted that the statute governing FDIC contains a nearly identical sue-and-be-sued clause, citing to the statute relied on by the shareholders in this case: 12 U.S.C. § 1819(a) (Fourth) (Supp. V, 1993), providing that FDIC "shall have power . . . [t]o sue and be sued, and complain and defend,

in any court of law or equity, State or Federal." 127 L. Ed. 2d at 316 n.3.

In discussing whether a claim is "cognizable" the *Meyer* Court noted:

"Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable. *Richards v. United States*, 369 U.S. 1, 6, 7 L. Ed. 2d 492, 82 S. Ct. 585 (1962). This category includes claims that are:

'[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' 28 U.S.C. § 1346(b).

"A claim comes within this jurisdictional grant—and thus is 'cognizable' under § 1346(b)—if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements outlined above. See *Loeffler [v. Frank*, 486 U.S. 549], 562, 100 L. Ed. 2d 549, 108 S. Ct 1965 (§ 2679(a) limits the scope of sue-and-be-sued waivers 'in the context of suits for which [Congress] *provided a cause of action* under the FTCA') (emphasis added)." 127 L. Ed. 2d at 317-18.

Applying the above principles, the Supreme Court concluded that Meyer's constitutional tort claim was not cognizable under the FTCA because to be actionable under 28 U.S.C. § 1346(b) (1988), a claim must allege, *inter alia,* that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." A constitutional tort claim such as Meyer's could not contain such an allegation. 127 L. Ed. 2d at 318.

However, the shareholders' action in this case falls within the definition of "cognizable" claims under § 1346(b). The claims are (1) against the United States, (2) for money damages, (3) for injury or loss of property, (4) allegedly caused by a negligently or wrongful act or omission of an employee of the government, (5) while acting within the scope of his or her office or employment, and (6) under circumstances wherein the United States, if a private person, would be liable to the claimant in accord with the law of the place where the omission occurred.

We note that the Supreme Court, in addressing element 6, has consistently held that § 1346(b)'s reference to "law of the place" means law of the state—the source of substantive liability under the Federal Tort Claims Act. 127 L. Ed. 2d at 318. Under Kansas law, a private person as well as the FDIC may act as a receiver of an insolvent bank. K.S.A. 9-1905; K.S.A. 9-1907. Thus, the United States, if a private person, depending upon the circumstances, could be liable to the claimant shareholders in accord with Kansas receivership law.

Nevertheless, the shareholders argue that their claims are not "cognizable" under the FTCA because they are not reasonably analogous to a claim for money damages for which a private person would be liable under Kansas law. The shareholders rely on the case of *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 542-43 (9th Cir. 1987), to support their contention that their claim is not cognizable under the FTCA. *Woodbridge* was decided under California law, and, as the court noted, "In California, only the state Superintendent of Banks or the FDIC, its appointee, can act as the receiver of a closed state bank. [Citation omitted.] Thus, the FDIC's liability is not akin to that of a 'private individual under like circumstances.' [Citation omitted.]" 815 F.2d at 543. Unlike California, Kansas law permits a private person to act as a receiver of a failed state bank.

The claims asserted by the shareholders in this case are "cognizable" under the FTCA. These claims are subject to federal jurisdiction and may not be litigated in state court. "State courts do not have jurisdiction of claims under the [Federal Tort Claims Act,] and jurisdiction is not obtained by removal even though the action might properly originate in federal court. 28 U.S.C.A. § 1346; *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.*, 258 U.S. 377, 42 S. Ct. 349, 66 L. Ed. 671." *Martinez v. Seaton*, 285 F.2d 587 (10th Cir. 1961).

The trial court was correct in its conclusion that "[c]laims of malfeasance or misfeasance against the FDIC in connection with obtaining or carrying out said orders, even if not barred, must be litigated in the United States District Court." Based upon our

resolution of this case, we need not decide whether collateral estoppel or the statute of limitations applies.

Affirmed.