**FRANKLIN SAVINGS CORPORATION and Franklin Savings Association, Plaintiffs,**

v.

**UNITED STATES of America and Federal Deposit Insurance Corporation as successor-in-interest to the Resolution Trust Corporation, Defendants.**

**Civil Action No. 95–2100–GTV.**

United States District Court, D. Kansas.

June 17, 1997.

---

Jonathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, for Plaintiffs.

Janice M. Karlin, Office of the U.S. Attorney, Kansas City, MO, Jeffrey Axelrad, Paul J. Boudreaux, Lisa Goldfluss, John T. Stemplewicz, Frank W. Hunger, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiffs bring this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671–2680, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., seeking to recover $820 million in damages arising out of the government's allegedly negligent management and operation of Franklin Savings Association. The case comes before the court on defendants' motion to dismiss (Doc. 59)[1] plaintiffs' second amended complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, defendants' motion is granted.

### I. Background

The court need not provide an exhaustive explanation of the events culminating in this lawsuit. Several prior decisions have recounted the saga of Franklin Savings in thorough detail. See Franklin Sav. Ass'n v. Office of Thrift Supervision, 742 F.Supp. 1089 (D.Kan.1990), rev'd, 934 F.2d 1127 (10th Cir.1991) (Franklin I), cert. denied, 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); Franklin Sav. Ass'n v. Office of Thrift Supervision, 35 F.3d 1466 (10th Cir.1994) (Franklin II); In re Franklin Sav. Corp., Bankr.No. 91–41518–11, 1994 WL 114652 (Bankr.D.Kan. Jan.18, 1994). This court, therefore, will offer only a brief overview of the case.

Prior to its seizure and liquidation by federal regulators, Franklin Savings Association ("FSA") functioned as a state chartered stock savings and loan association. Approximately 94% of FSA's stock is owned by its holding company, Franklin Savings Corporation ("FSC"), a corporation organized and existing under Kansas law.

In 1990, the director of the Office of Thrift Supervision determined that FSA was in an unsafe and unsound condition to transact

---

1. Defendants' motion to dismiss (Doc. 59) plaintiffs' second amended complaint incorporates and supersedes their prior motions to dismiss (Docs. 11 and 28).

business and appointed the Resolution Trust Corporation ("RTC") as conservator of the thrift. FSA and FSC subsequently filed a lawsuit under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1461 *et seq.,* seeking to remove the conservator. Although the district court ruled in favor of FSA and FSC, the Tenth Circuit reversed, holding that the administrative record supported the office of Thrift Supervision's decision to appoint a conservator. *Franklin I,* 934 F.2d at 1150–51.

In September 1992, the director of the Office of Thrift Supervision converted the RTC's role with respect to FSA from conservator to receiver and ordered the RTC to liquidate the savings association. Once again, both FSA and FSC commenced a lawsuit challenging the agency's actions. The Tenth Circuit, affirming the district court's dismissal of the case, held that the Office of Thrift Supervision's imposition of a receivership is not subject to judicial review. *Franklin II,* 35 F.3d at 1469–71.

The instant action has its genesis in a complaint that FSA and FSC initiated in January 1993 in a bankruptcy court adversary proceeding. The matter arose there because FSC had filed for Chapter 11 relief in bankruptcy court eighteen months earlier.[2] In the original adversary complaint, plaintiffs sought damages under the FTCA for negligence, breach of fiduciary duty, and conversion by the RTC while acting as conservator of FSA. In March 1995, this court approved the recommendation of the bankruptcy court that the bankruptcy reference be withdrawn and plaintiffs' adversary complaint be transferred to the district court.[3]

After the case was transferred to this court, plaintiffs made several amendments to their complaint. Specifically, they (1) named the Federal Deposit Insurance Corporation ("FDIC"), which is the successor–in–interest

to the RTC, as a defendant; (2) asserted an APA claim alleging that the RTC, as conservator, had acted in excess of its statutory authority; and (3) added a breach of duty claim against defendants based on the RTC's alleged nongovernmental activity in commerce while acting as FSA's conservator.

Defendants have filed a series of motions to dismiss. The court now turns to those motions.

## II. Standards Governing Motions to Dismiss

### A. Generally

A party seeking to invoke the jurisdiction of a federal court must demonstrate that the case rests within the court's jurisdiction. *United States v. Bustillos,* 31 F.3d 931, 933 (10th Cir.1994). The burden of proof on this issue depends upon the procedure used to resolve the matter. *See FDIC v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992).

Defendants' motion to dismiss for lack of subject matter jurisdiction attacks the facial validity of plaintiffs' complaint. Ordinarily, the court would analyze such a motion under Rule 12(b)(1). "However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995). A jurisdictional question is considered intertwined with the merits of the case if the court's subject matter jurisdiction is dependent upon the same statute that provides the substantive claim in the case. *Id.*

In the instant action, defendants contend that explicit provisions contained in the APA and FTCA preclude the court from entertaining plaintiffs' claims. Because plaintiffs predicate their suit on these two statutes, the jurisdictional question before the court is

---

**2.** FSC remains in control of its estate property as a debtor–in–possession.

**3.** FSC also filed a separate adversary counter-claim complaint in bankruptcy court in October 1992 against the Office of Thrift Supervision and the United States. In that action, FSC seeks damages under the Tucker Act, 28 U.S.C.

§ 1491, for alleged misconduct in imposing a conservatorship and receivership upon FSA, and in disposing of FSA's assets under color of FIRREA. This court subsequently ordered the case transferred to the district court, where the matter is now pending as Civ. No. 95–2039–GTV.

intertwined with the merits of the case. The court, therefore, will analyze defendants' motion pursuant to Rule 12(b)(6).[4]

## B. Rule 12(b)(6)

A court may not grant a motion to dismiss for failure to state a claim unless it appears that the plaintiff can prove no set of facts that would entitle it to relief. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). In considering such a motion, the court must assume the truth of all well–pleaded facts in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990). The court also must construe the pleadings liberally and indulge all reasonable inferences in favor of the plaintiff. *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984); Fed. R.Civ.P. 8(a). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff ultimately will prevail, but whether it is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## III. Discussion

Before reaching the merits of plaintiffs' claims, the court must address two procedural matters.

## A. Administrative Remedies

■ Defendants first contend that FSA may not pursue this lawsuit in–as–much as it has not exhausted its administrative remedies. The court agrees. Although Congress waived the government's sovereign immunity for certain tort–based actions when it enacted the FTCA, Congress imposed certain conditions on that waiver. One such condition is that litigants wishing to bring a tort claim against the United States first must file an administrative claim with the appropriate federal agency. 28 U.S.C. § 2675(a). The

administrative claim is a jurisdictional prerequisite that the court has no power to waive. *Nero v. Cherokee Nation,* 892 F.2d 1457, 1463 (10th Cir.1989). If there are multiple claimants, each must file a proper claim unless another claimant is legally entitled to assert such a claim on its behalf. *Muth v. United States,* 1 F.3d 246, 249 (4th Cir.1993).

FSA argues that it filed no administrative claim because such a claim would have been futile. The fact that pursuing an administrative remedy would be a futile endeavor, however, is irrelevant. *Nero,* 892 F.2d at 1463; *accord Industrial Constructors Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 967–68 (10th Cir.1994). Moreover, FSC proffers no evidence that it is authorized to assert a claim on behalf of FSA. *See* 28 C.F.R. § 14.2(a) (1996) (agent filing administrative claim on principal's behalf must accompany claim with evidence of its authority). Because FSA did not file an administrative claim and because there is no evidence that FSC is authorized to act on behalf of FSA, FSA's FTCA claim must be dismissed.

## B. Standing

■ Defendants next argue that although FSC filed an administrative claim, it has no standing to sue for harm allegedly inflicted upon FSA. In support of this assertion, defendants cite the general principle that shareholders do not have standing to redress injuries to the corporation in which they hold stock. *See K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1154 n. 7 (10th Cir. 1985) (citations omitted). This rule, however, has no application in the case at bar. Kansas law, which applies here because FSC was incorporated in Kansas, *see Burks v. Lasker,* 441 U.S. 471, 477–78, 99 S.Ct. 1831, 1836–37, 60 L.Ed.2d 404 (1979), dictates that FSC may pursue this case in a derivative capacity.

### 1. Derivative Action

■ As an owner of approximately 94% of FSA's stock, FSC may maintain a derivative action on the theory that FSA has

---

4. In support of their motion to dismiss, defendants attach the affidavits of Kevin Carver and Ann Richards, two RTC officials. (Doc. 11, Ex. I & Doc. 22, Ex. A). The court, however, has not considered those affidavits or any other material extraneous to the complaint in ruling on defendants' motion.

sustained a direct injury and is unable to ameliorate the wrong. The derivative action developed in equity to enable shareholders to sue in the corporation's name if individuals or entities controlling the corporation refuse or are unable to sue on its behalf. *Kaufman v. Kansas Gas & Elec. Co.*, 634 F.Supp. 1573, 1577 (D.Kan.1986). The right to pursue such actions has been codified explicitly in both Fed.R.Civ.P. 23.1 and K.S.A. § 60–223a, the terms of which are virtually identical.

The only potential impediment to FSC's suit is the derivative action's demand requirement. This requirement mandates that shareholders attempt to obtain relief directly from the corporation before initiating a derivative lawsuit.[5] The rule essentially serves as a form of "alternative dispute resolution," giving the corporation the opportunity to pursue alternative remedies, thereby resolving grievances without burdensome and expensive litigation. *Kaufman*, 634 F.Supp. at 1577 (citing *Lewis v. Graves*, 701 F.2d 245, 247–48 (2d Cir.1983)). FSC concedes in its verified complaint that it made no demand upon FSA to assert this tort action. (Second Am. Compl. ¶ 5). FSC insists, however, that it is exempt from the requirement because any such request would have been futile. *Id.*

Despite the strong policy and practical advantages favoring exhaustion of intracorporate remedies, Rule 23.1's demand prerequisite is not without exceptions. As the court in *Kaufman* noted:

> A shareholder may be allowed to assume control of litigation without first affording the directors the opportunity to occupy their normal status by making demand, if the shareholder can show his case is exceptional or, in other words, that demand would be a futile, useless exercise. Thus, the shareholder must demonstrate a degree of antagonism between the directors and the corporate interest such that the directors would be incapable of doing their duty.

*Kaufman*, 634 F.Supp. at 1578 (citation omitted); *accord Newton v. Hornblower, Inc.*, 224 Kan. 506, 582 P.2d 1136, 1141 (1978). Once the Office of Thrift Supervision placed FSA into receivership, FSA no longer had an independent existence. The RTC, as receiver, could not be expected to file an FTCA action because such an action would be tantamount to a tortfeasor bringing suit against itself. *See Gaubert v. United States*, 885 F.2d 1284, 1290 n. 6 (5th Cir.1989), *rev'd on other grounds*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Landy v. FDIC*, 486 F.2d 139, 147 (3d Cir.1973) (citation omitted); *Branch v. FDIC*, 825 F.Supp. 384, 403 (D.Mass.1993). Indeed, at the time the case was filed, FSA was effectively in the hands of the very entity that needed to be sued in order to vindicate FSA's rights. The court finds that this inherent conflict justified FSC's decision not to demand relief directly from the derivative corporation. Accordingly, FSC may maintain a derivative action.

*2. Direct Action*

Citing *Boyle v. Harries*, 22 Kan.App.2d 686, 923 P.2d 504 (1996), for support, plaintiffs contend that FSA's shareholders also may litigate this lawsuit in their individual capacities. Plaintiffs read *Boyle* too broadly. In that case, the Kansas Court of Appeals recognized an exception to the distinction between derivative and direct shareholder actions merely in the context of closely held corporations. *Id.* 923 P.2d at 512–13 (citing *Richards v. Bryan*, 19 Kan.App.2d 950, 879 P.2d 638, 648–49 (1994)). The court did not intend to obliterate the general concept that "a shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Richards*, 879 P.2d at 646 (citations omitted).

FSA is not a close corporation under Kansas law. Although FSC owns approximately 94% of FSA's outstanding shares, the

**5.** Fed.R.Civ.P. 23.1 states that "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

remaining 6% is owned by FSA's employees under an employee stock ownership plan or is publicly traded on the NASDAQ. K.S.A. § 17–7202(a)(3) states that a corporation cannot be considered "closely held" if any of its stock has been subject to a public offering. Furthermore, FSC's alleged injuries are neither distinct from those of other FSA shareholders nor predicated upon independent contractual rights. Accordingly, the *Boyle/Richards* exception to direct shareholder actions is not applicable in the instant action. FSC may prosecute this case only in a derivative capacity.

## C. APA Claim

Turning to the merits of the case, the court first examines plaintiffs' APA claim. In this claim, plaintiffs allege that the RTC exceeded its statutory authority in seizing FSA and in acting as FSA's conservator. Plaintiffs seek both monetary relief and a declaration that the RTC's actions are void.

### 1. Monetary Relief

■■■■ The court has no jurisdiction over plaintiffs' claim for monetary relief because the APA's waiver of sovereign immunity, 5 U.S.C. § 702, does not apply to actions seeking "money damages." *See Hamilton Stores, Inc. v. Hodel,* 925 F.2d 1272, 1276 (10th Cir.1991). Plaintiffs attempt to skirt this restriction by arguing that the requested relief is entirely equitable in nature. The court finds this contention unpersuasive.

In *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court undertook a detailed analysis of what constitutes "money damages" for purposes of the APA. In that case, the state of Massachusetts charged that the Department of Health and Human Services improperly refused to contribute to (*i.e.* reimburse) the state's Medicaid program for certain costs associated with intermediate care facilities for the mentally retarded. In its complaint, the state sought, *inter alia,* an injunction ordering the agency to make the requisite contributions. The issue before the Court was whether the APA authorized such relief.

The Court observed initially that the mere fact that a judicial remedy may require the payment of money by one party to another is not a sufficient reason to characterize the relief as money damages. *Id.* at 893, 108 S.Ct. at 2731–32. Indeed, a distinction has been recognized consistently between "an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property or monies." *Id.* The Court held that Congress intended the APA to adhere to this distinction. Thus, the term "money damages" in 5 U.S.C. § 702 "refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, 'whereas specific remedies are not substitute remedies at all, but [an] attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895, 108 S.Ct. at 2732 (citing *Maryland Dep't of Human Resources v. Department of Health & Human Servs.,* 763 F.2d 1441, 1446 (D.C.Cir.1985) (citing Dan B. Dobbs, *Handbook on the Law of Remedies* 135 (1973))).

Applying the *Bowen* principles to the instant action, the court concludes that plaintiffs' request for "the return of the money and money equivalents of FSA's business" is nothing more than a surreptitious attempt to claim money damages in contravention of the APA. What plaintiffs seek is compensation for the diminished value of FSA's assets after being seized by government regulators. Under any definition, such relief is legal—not equitable—in nature.

Plaintiffs place great reliance on *MCorp v. Clarke,* 755 F.Supp. 1402 (N.D.Tex.1991), in which a bank holding company sued the Comptroller of the Currency and the FDIC for unlawfully closing numerous banks. The court held that the holding company's requested relief was equitable and thus, not barred by the APA's "money damages" prohibition. *Id.* at 1412. This court rejects that holding. First, as defendants correctly point out, most of *MCorp* has been repudiated by the 1989 FIRREA amendments and by *Unit-*

*ed States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Second, the purportedly "similar" case upon which *MCorp* predicated its APA discussion, *Texas Am. Bancshares, Inc. v. Clarke,* 740 F.Supp. 1243 (N.D.Tex.1990), is entirely distinguishable from *MCorp* and in no way supports *MCorp*'s "equitable" findings.[6] In sum, plaintiffs have failed to convince the court that the relief they seek can be described in any way other than "money damages."

### 2. Declaratory Relief

■ Plaintiffs also seek a declaration that the RTC's actions as conservator of FSA are void.[7] It appears, however, that plaintiffs' request for declaratory relief under the APA is little more than an attempt to make an end–run around the FTCA's exclusive remedy provisions by nominally characterizing their requested relief as equitable in nature. Indeed, the APA and tort claims are inextricably intertwined; the declaratory relief that plaintiffs seek is not independent from the tort claim, but is merely a means by which to satisfy the tort claim's prima facie elements.

Moreover, even if the APA and FTCA claims were independent and the court declared the RTC's actions void, the only relief available to plaintiffs would be money damages. As noted above, such damages may not be sought under the APA. The case is analogous to *Golden Pacific Bancorp v. Clarke,* 837 F.2d 509 (D.C.Cir.1988). In *Golden Pacific,* a bank holding company sought review under the APA of the Comptroller of the Currency's decision to declare the bank insolvent and appoint the FDIC as receiver. The holding company also asked for damages under the FTCA. In affirming the dismissal of the case, the District of Columbia Circuit held:

> [Plaintiff] would have us entertain its challenge to the reasonableness of the Comptroller's actions, but neither the APA nor the FTCA permits us. Appellant asserts

that a careful review of all the documentation should have led the Comptroller to conclude that the Bank was in fact solvent and that it had sufficient liquidity to meet depositors' demands. But ... the only relief appellant seeks is money damages; no specific relief under the APA is any longer—if it ever was—at issue. [Plaintiff's] claim under the APA ... serves only as a device upon which to predicate damages for alleged arbitrary and capricious actions of the Comptroller. This, however, appellant cannot do.

*Id.* at 511 (footnote omitted). Because plaintiffs may not seek money damages and because their request for declaratory relief is improper, the court dismisses plaintiffs' APA claim.

### D. FTCA Claim

■ The FTCA generally waives the sovereign immunity of the United States for negligence to the same extent that a private person would be liable in identical circumstances under state law. 28 U.S.C. § 1346(b). Thus, if a negligence claim is based merely on the violation of a federal statute or regulation, no claim will lie under the FTCA unless a similar duty exists under state law. *Klepper v. City of Milford,* 825 F.2d 1440, 1448 (10th Cir.1987). Defendants insist that plaintiffs cannot establish a prima facie case of negligence under Kansas law because federal regulators, in their capacity as conservator or receiver, owe no duty to the shareholders or directors of a seized thrift. Plaintiffs dispute defendants' conclusion and provide a litany of bases upon which they claim the regulators' duties rest. Defendants' discretionary function defense, however, obviates the need for the court to reach this issue.

■ The FTCA's sovereign immunity waiver is limited explicitly by the discretionary function exception, which prohibits claims against the United States "based upon

---

6. The Fifth Circuit later reversed *Clarke* without reaching the "equitable remedy" issue. *See Texas Am. Bancshares, Inc. v. Clarke,* 954 F.2d 329 (5th Cir.1992).

7. The Tenth Circuit previously rejected plaintiffs' attacks on the Office of Thrift Supervision's deci-

sions to appoint a conservator for FSA and later replace the conservator with a receiver. *See Franklin I,* 934 F.2d 1127; *Franklin II,* 35 F.3d 1466. Thus, the only matter left for plaintiffs to contest is the RTC's management of FSA in its role as the thrift's conservator.

the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). Application of the discretionary function, therefore, is a threshold determination—"a jurisdictional issue which precedes any negligence analysis." *Johnson v. United States,* 949 F.2d 332, 335 (10th Cir.1991); *accord Domme v. United States,* 61 F.3d 787, 789 (10th Cir.1995) ("Only if the United States waives its sovereign immunity pursuant to the FTCA does the question of whether the government owed the plaintiffs a duty of care under state law arise.").

 In determining whether particular government conduct falls within the discretionary function exception, the court applies a two–pronged test. First, the court examines whether the act at issue "involves an element of judgment or choice." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). "[T]he nature of the conduct, rather than the status of the actor" is the critical factor under this first prong. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). If a federal statute, regulation, or policy specifically requires a particular course of action, no judgment or choice is implicated and the discretionary function does not apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59. If, on the other hand, the government's conduct is not controlled by such a directive, the court must proceed to the second prong of the analysis.

In the second step, the court looks at whether the judgment involved "is of the kind that the discretionary function was designed to shield." *Id.* The basis for the exception "was Congress' desire to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536–37, 108 S.Ct. at 1959 (citing *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764–65). Thus, only "governmental actions and decisions based on considerations of public policy" are protected by the discretionary function exception. *Id.* at 537, 108 S.Ct. at 1959.

The seminal case applying the discretionary function in the thrift industry is *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In that action, a shareholder of an insolvent savings and loan association filed an FTCA suit against the United States, alleging that federal regulators had negligently supervised the thrift's officers and directors as well as the institution's day–to–day operations. The government sought to dismiss the case on the basis of the FTCA's discretionary function exception. The Court accepted the government's argument.

The Court first noted that decisions made at the operational or management level of a bank are encompassed within the exception:

> A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* at 325, 111 S.Ct. at 1275. The court then observed that although neither party had identified any formal regulations governing the conduct at issue, the applicable statutory provisions were couched in discretionary terms and "left to the judgment of the agency the decision of when to institute proceedings against a financial institution and which mechanism to use." *Id.* at 329, 111 S.Ct. at 1277. The Court concluded that the federal regulators' actions had been predicated on "public policy considerations regarding federal oversight of the thrift industry" and, therefore, fell within the discretionary function exception. *Id.* at 332, 111 S.Ct. at 1278–79.

 In the case at bar, plaintiffs claim that the discretionary function does not apply because the RTC violated numerous mandatory procedures set out in its regulatory manuals and policy directives. (Second Am. Compl. at 14–17.) The court

finds plaintiffs' argument unpersuasive. First, none of the manuals or directives that plaintiffs cite require bank regulators to pursue any specific course of action. The materials simply contain definitions, general educational guidelines, and broad objectives for asset management and disposition. The manuals are highlighted by language of a predominantly precatory nature, implicitly and explicitly vesting RTC officials with wide discretion in determining how to proceed on various subjects. Regulations requiring that agency employees "comprehensively and objectively weigh alternative actions," and "ensure that asset integrity and value are maintained," hardly constitute the type of "specifically prescribed courses of action" necessary to invoke the court's jurisdiction under the FTCA.

Second, the vast majority of plaintiffs' allegations amount to claims that federal regulators, in carrying on the business of FSA, failed to take into account pertinent fiscal information. These averments do not state a claim upon which relief can be granted. "The failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir.1993). In analyzing the discretionary function exception, the question is not whether the government acted negligently or abused its discretion. Rather, the proper inquiry focuses on whether the government's shortcomings violated. specific and mandatory directives. *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1540–41 (10th Cir.1992) (citing *Allen v. United States*, 816 F.2d 1417 (10th Cir.1987)). As noted above, plaintiffs have pointed to no such regulations.

Finally, even if some of the policies that plaintiffs cite could be construed as mandatory, their claims still would not escape the discretionary function exception. For example, plaintiffs contend that the RTC neglected to prepare case memoranda, secure legal opinions, or obtain knowledge of FSA's assets in the manner agency regulations prescribe. There is no allegation, however, that use of such procedures would have changed the outcome of any agency decision. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 285–86 (3d Cir.) (en banc) (alleged violation of mandatory procedures in compiling data upon which ultimate discretionary "injury–causing decision" is predicated does not vitiate discretionary function exception), *cert. denied sub nom., Julia Saavedra Balmaceda, Inc. v. United States*, —— U.S. ——, 116 S.Ct. 49, 133 L.Ed.2d 15 (1995). "[T]here is no difference in the quality or quantity of the interference occasioned by judicial second guessing, whether the plaintiff purports to be attacking the data upon which the policy is founded or acknowledges outright that he or she is challenging the policy itself." *Id.* at 286.

Having determined that the RTC's actions involved elements of choice and judgment, the court now must examine whether the discretionary function exception shields that type of judgment. The Supreme Court has stated:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme.

*Gaubert*, 499 U.S. at 324–25, 111 S.Ct. at 1274–75. This court finds that the discretionary function is well–suited to the instant action.

The objectives of governmental agencies overseeing the thrift industry are often in direct conflict with the officers and directors of financial institutions. While private officials maintain a loyalty and fiduciary duty to shareholders, federal regulators owe their allegiance to depositors and the general public. If private financial institutions could sue regulatory agencies for negligently performing discretionary functions, the ability of those agencies to act in the public's best interest would be compromised. Sanctioning such suits also would put courts in the diffi-

cult, if not impossible, position of judging the propriety of the policymaking acts of a coordinate branch.

The RTC's actions while serving as conservator and receiver of FSA were related directly to public policy considerations regarding federal oversight of the thrift industry. *See Gaubert,* 499 U.S. at 332–33, 111 S.Ct. at 1278–79. Indeed, the nature of and inherent discretion underlying the agency's decisions are what drove Congress to enact the discretionary function exception in the first place. *See Dalehite v. United States,* 346 U.S. 15, 26–30, 73 S.Ct. 956, 963–65, 97 L.Ed. 1427 (1953) (describing legislative history of 28 U.S.C. § 2680(a)); *Varig Airlines,* 467 U.S. at 808–12, 104 S.Ct. at 2762–63 (same). The court, therefore, concludes that both prongs of the discretionary function test have been met and the government is insulated from liability with respect to plaintiffs' FTCA claims.

### E. Nongovernmental Activity Claim

Perhaps anticipating that their tort claims might fall to the discretionary function exception, plaintiffs invite the court to open a gaping hole in FTCA jurisprudence by excluding from the Act's coverage all "nongovernmental activity in commerce." The court declines this invitation.

Plaintiffs predicate their "nongovernmental activity" claim on last year's landmark Supreme Court decision, *United States v. Winstar Corp.,* —— U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). In that case, the Court held that the government's unilateral revocation of certain favorable accounting methods, originally adopted to facilitate the acquisition of failing thrifts, constituted a breach of contract and entitled the purchasers of the failing thrifts to damages.[8] The Court observed that "[w]hen the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Id.* at —— —— ——, 116 S.Ct. at 2464–65 (citing *Lynch v.*

*United States,* 292 U.S. 571, 579, 54 S.Ct. 840, 843–44, 78 L.Ed. 1434 (1934)).

*Winstar* has no applicability to the instant action. That case focuses exclusively on *contractual* obligations that the United States incurred through individualized negotiations with thrifts. *Id.* at —— —— ——, 116 S.Ct. at 2448–52. In no way does the opinion suggest that the government subjects itself to limitless *tort* liability any time it enters the domain of commerce. Indeed, such a theory would render much of the FTCA meaningless.

Furthermore, the government's actions in the case at bar cannot be considered "nongovernmental activities." Federal regulators did not "step in the shoes" of FSA's officers and directors; they supplanted them. Although some of the tasks that the RTC undertook in its roles as conservator and receiver of FSA may have been proprietary in nature, the agency ultimately acted in a regulatory capacity pursuant to a regulatory scheme. The agency's objectives were not to maximize profits for the thrift's shareholders, but to protect depositors and replenish the federal depository insurance fund. These objectives, which entail significant policy considerations, could not be accomplished if regulators owed a concomitant duty to the officers and directors of the seized institution.

This holding does not mean that the United States always escapes liability in the thrift industry context. FTCA actions still may be maintained against the government for federal regulators' negligence in performing ministerial and non-policy oriented discretionary activities. The discretionary function exception, however, cannot be avoided simply by characterizing government employees' actions as "nongovernmental" in nature.

### F. Tort Claim Against FDIC

As a final effort at imposing liability on the government, plaintiffs assert common–law tort claims directly against the FDIC. Plaintiffs predicate these claims on 12 U.S.C. § 1441a(b)(9)(E), which empowers the FDIC "[t]o sue and be sued in its corporate capaci-

---

8. Specifically, the Supreme Court held in *Winstar* that the United States, with the passage of FIRREA, had breached its contracts to allow

purchased savings and loans to count regulatory goodwill as an asset.

ty in any court of competent jurisdiction." This statute, however, is inapplicable here.

■■■■ "In order to place torts of 'suable' agencies ... upon precisely the same footing as torts of 'nonsuable' agencies, Congress, through the FTCA, limited the scope of sue–and–be–sued waivers such as that contained in [the FDIC's] organic statute." *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994) (first alteration in original) (citation omitted). Specifically, Congress stated:

> The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under [28 U.S.C. § 1346(b) ], and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a). "Thus, if a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name,' despite the existence of a sue–and–be–sued clause." *Meyer,* 510 U.S. at 476, 114 S.Ct. at 1001.

■■■ A claim is "cognizable" (*i.e.,* actionable) under section 1346(b) if it alleges each of the requisite elements outlined in the statute's jurisdictional grant. *Id.* at 476–77, 114 S.Ct. at 1000–01. Those elements are that: (1) the claim be against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death, (4) caused by the negligent or wrongful act or omission of any employee of the Government, (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *Id.* at 477, 114 S.Ct. at 1001 (citing 28 U.S.C. § 1346(b)(1)).

■■■■ The court finds that plaintiffs' claims are cognizable under section 1346(b). The thrust of plaintiffs' action is that government regulators negligently seized, operated, and liquidated FSA, thereby breaching their fiduciary duty to conserve and operate the savings association. Such negligence claims against bank receivers are well recognized under Kansas law, *see In re Cedar Vale State Bank,* 257 Kan. 497, 894 P.2d 816 (1995), and thus fall within the exclusive purview of the FTCA.

Plaintiffs contend that if, as the court held above, the discretionary function exception serves as a jurisdictional bar to their FTCA claims, their common law tort claims against the FDIC cannot be considered cognizable under section 1346(b). The court rejects this argument as it would transform the discretionary function exception into a meaningless provision. Litigants could avoid the force of the statute merely by suing an agency directly. As the Seventh Circuit has observed, "the waiver of sovereign immunity from tort liability of a federal agency or governmental corporation is defined in the Federal Tort Claims Act, and ... sue–and–be–sued authority does not permit suit outside that Act for torts excepted from coverage of that Act." *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 371 (7th Cir.1979); *accord Aviles v. Lutz,* 887 F.2d 1046, 1049 (10th Cir.1989); *Freeling v. FDIC,* 221 F.Supp. 955, 957 (W.D.Okla.1962), *aff'd,* 326 F.2d 971 (10th Cir.1963). Having determined that all of plaintiffs' tort claims are cognizable under the FTCA, the court dismisses the common law tort claims asserted directly against the FDIC.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion to dismiss (Doc. 59) plaintiffs' second amended complaint is granted.

The case is now closed.

**IT IS SO ORDERED.**